**UNITED STATES of America ex rel. Roy HELWIG, Petitioner,**

v.

**Angelo C. CAVELL, Warden Western State Penitentiary, Pittsburgh 33, Pennsylvania, Respondent.**

**Civ. No. 17415.**

United States District Court
W. D. Pennsylvania.
March 2, 1959.

Roy Helwig, pro se.

Richard D. Agresti, Asst. Dist. Atty., Erie, Pa., for respondent.

MARSH, District Judge.

In his petition and supplemental petition for writ of habeas corpus, relator, a convicted state prisoner, averred that evidence favorable to him had been suppressed by the prosecution; and that he was convicted of a charge of burglary and larceny on false and fraudulent evidence and perjured testimony given by his former wife and certain witnesses for the prosecution.[1] He averred that this spurious testimony was an instrument of a conspiracy, in which the prosecuting officer, Joseph Antolik, Chief of Police of Girard, Pennsylvania, was a

participant, to convict the relator of a burglary which he did not commit. The court being of the opinion that the petitions raised questions of fact,[2] ordered a hearing but limited the issues at the hearing:

"1. To facts discovered since the trial which will show that the prosecuting officer or officers conspired and colluded with other persons to obtain relator's conviction of burglary by false and fraudulent evidence and perjured testimony, with knowledge that said co-conspirators or some of them perpetrated the said crime and that relator was innocent.

"2. To facts showing that the prosecution suppressed and withheld from the jury evidence favorable to relator.

"3. To facts showing the relator has been denied due process of law and equal protection of the law in violation of the Fourteenth Amendment of the Constitution of the United States."

From an examination of the pleadings, transcript of the trial, and testimony taken at the hearing in this court, the court makes the following:

Findings of Fact.

1. Captain Verne Teeple, Sergeant Harold G. Rhoda, Patrolman Walter Mackey, and Constable Dale Brooks, witnesses not called at the trial by the Commonwealth, were not in possession of any facts or evidence favorable to relator.

2. Ann J. Campana, a witness not called at the trial, was not in possession of any facts or evidence favorable to relator.

3. None of the Commonwealth prosecuting officers, including the prosecutor, Joseph Antolik, Chief of Police of Girard, Pennsylvania, knowingly and intentionally used or participated in any conspiracy

1. Relator alleged that Joseph Campana, one of the Commonwealth witnesses, was the actual burglar.

2. See unpublished Memorandum Opinion filed December 23, 1958.

to use perjured testimony at the trial of relator.

4. Relator's rights under the Fourteenth Amendment were not violated at his trial, nor was he the victim of fundamental unfairness.

### Discussion.

Particularly because relator represented that the testimony of five "eye witnesses" was suppressed and withheld by the prosecution "whose testimony would prove that [he] was falsely accused of burglary",[3] a hearing was ordered and subpoenas issued for, inter alia, these witnesses.[4] None of these five witnesses were subpoenaed by the Commonwealth or testified at the relator's trial. At the habeas corpus hearing none of them testified to any facts which would lead the court to conclude that relator was falsely accused of burglary. In fact, had their testimony been offered at the trial, it would have corroborated the testimony of other Commonwealth witnesses to the effect that relator was in possession of recently stolen property which he sold to Joseph Campana and Benjamin Blakely in Warren, Ohio.

After conviction relator appealed to the Pennsylvania Superior Court. That court affirmed the conviction, Commonwealth v. Helwig, 184 Pa.Super. 370, 134 A.2d 694. At page 375 of 184 Pa.Super., at page 696 of 134 A.2d of the opinion, it was stated that the relator had raised 54 questions in his brief for reversal of the conviction and the granting of a new trial. The relator confirmed[5] a statement made at the hearing that these questions included the allegation made here that relator was framed and convicted on perjured testimony. The Superior Court stated that "the entire brief and record has received detailed and careful study".

It is well settled that the sufficiency of the evidence involving errors of law or of fact must be raised by appeal, and may not be relitigated in a collateral attack on a judgment by way of a habeas corpus proceeding. See Arthur v. United States, 5 Cir., 1956, 230 F.2d 666 and cases cited therein.

At the trial relator charged that he had been framed by Joseph Campana, Benjamin Blakely, Ann Campana, and his former wife, Cora. In his petition he averred that the prosecutor knowingly used this perjured testimony to convict him. These accusations were thoroughly litigated at the trial which lasted eight days. Any proof relator had to the effect that perjured testimony was being used against him and that he was being framed could have been and was put in evidence. The alleged fabrications and inconsistencies were brought out in the testimony for the jury's scrutiny. All witnesses relator wanted were subpoenaed or sent for and brought to the trial at great inconvenience and expense. The trial judge was exceedingly patient and accorded relator every opportunity to put in all his evidence and to make his argument that he was being "framed" on perjured testimony. The evidence was fairly summarized in a comprehensive and masterful charge. It is the jury's duty to determine what testimony is believable and to reconcile inconsistent and conflicting testimony. This the jury did and found relator guilty. We do not think it is the purpose of a habeas corpus proceeding to retry the case or retry any matters which were considered by the jury.

Such fabrications, inconsistencies and contradictions which relator points out and wishes to point out in the trial transcript were only of the kind often present in a jury trial, and, having

3. See supplemental petition, particularly Allegation of Fact No. 13, pp. 16–18, Allegation of Fact No. 3, pp. 4–7, and Allegation of Fact No. 5, pp. 8–9, and matters contained on pp. 10–15.

4. Cf. Pyle v. Kansas, 1942, 317 U.S. 213, 215–216, 63 S.Ct. 177, 87 L.Ed. 214; United States ex rel. Thompson v. Dye, 3 Cir., 1955, 221 F.2d 763.

5. See page 32 of relator's petition.

been resolved adversely to the relator by the jury, are of no significance now. United States v. Jakalski, 7 Cir., 1956, 237 F.2d 503, 505. Immaterial and trivial conflicts in testimony do not constitute perjury invalidating conviction of a crime. A question, fully litigated at the trial and on appeal from the conviction, as to whether relator was "framed" and falsely accused of the burglary, may not be relitigated in a habeas corpus proceeding. In re Sawyer's Petition, 7 Cir., 1956, 229 F.2d 805; United States v. Spadafora, 7 Cir., 1952, 200 F.2d 140; Cobb v. Hunter, 10 Cir., 1948, 167 F.2d 888.

Relator insisted that if permitted at the habeas corpus hearing, he could have demonstrated that the various Commonwealth witnesses and his former wife, Cora, told many lies at the trial. He said to do this would take from 5 days to a week.[6] He claimed that Cora "maliciously, deliberately and knowingly told over 300 lies" at the trial.[7] An examination of the transcript of the trial discloses many inconsistencies, and, no doubt, if we had permitted a detailed examination at the habeas corpus hearing of all the witnesses relator desired to subpoena, including Cora, further inconsistencies would have been disclosed. The burglary occurred in September, 1954, and recollections of the details of subsequent events have faded. This would be particularly true of the two principal Commonwealth witnesses from Ohio who were ex-convicts and not of a type noted for accurate, detailed memories.

Joseph Campana and Benjamin Blakely, the ex-convicts, and Janes Jacobsen, the victim of the burglary, were produced for relator at the hearing. None of these witnesses admitted to any willful perjury and all denied that they had conspired to frame relator. Chief Antolik denied he was a participant in any conspiracy to frame relator or knowingly used any perjured testimony to convict him.

Thus assuming the existence of the inconsistencies, inaccuracies, faulty recollections and "lies" in the trial record, the relator, except for his own allegations and expectations, has failed to prove that any perjured testimony on the part of any Commonwealth witness was knowingly and intentionally used by the prosecuting authorities.

■ Relator complains that the prosecutor and the Assistant District Attorney knowingly and intentionally did not reveal to the court and jury that relator's witness, Cora Helwig, was lying when she testified that the stolen typewriter which relator brought into her house following the burglary was in a "carrying case".[8] This contention is specious. There is no obligation on the prosecuting authorities to correct the testimony of a defense witness. The indictment alleged that a typewriter had been stolen in the burglary. Jacobsen, the victim, identified the typewriter and other articles which were stolen from his place of business; Antolik, the prosecutor, identified the typewriter and other articles which he had recovered from Campana and Blakely in Warren, Ohio, and returned to Jacobsen; Campana testified that relator had sold him the typewriter which Antolik confiscated; none of these witnesses mentioned that the "carrying case" had also been stolen. Relator's assertion that the stolen typewriter was offered as an exhibit enclosed in its "carrying case" is of no significance; it would have been a simple matter for him to have removed the case for purposes of cross-examination if he had so desired.

After reading the trial testimony of relator's former wife, Cora, she would not be considered by this court to be a credible witness. Though ill, she was called by relator at the trial as a defense witness and interrogated by him for four

---

6. See Transcript of proceedings on rule to show cause, pp. 58–59.

7. See supplemental petition, p. 9.

8. Trial transcript, pp. 486, 635.

days. This examination exposed many and serious contradictions, but none of them were shown at the habeas corpus hearing to have been induced by the Commonwealth's prosecutor. Other than relator's allegation, nothing was offered even to hint that his ex-wife was in unlawful collusion with any of the Commonwealth prosecuting or law-enforcement· officers.

Relator offers to prove other falsifications by his wife and by Campana, [9] but not one shred of evidence is offered or was adduced to show that the prosecutor knew of these falsifications or intentionally used them.

At the conclusion of the hearing, relator insisted he should have the opportunity to examine his former wife, Cora,[10] and other witnesses. Opportunity was then given relator to specify what he expected to prove by these witnesses and, if material, he was advised that a further hearing would be held and subpoenas issued. Accordingly, relator requested that subpoenas be issued for nine witnesses. These include his former wife and five witnesses whose testimony had already been taken at the hearing. The testimony offered is for the purpose of demonstrating further perjured testimony on the part of his former wife and some of the Commonwealth's witnesses at the trial. But there is no indication whatsoever that any of such additional perjured testimony was knowingly and intentionally used by the prosecuting officer. Accordingly, we refuse the request to issue additional subpoenas and fix another day for hearing; the testimony is closed.

Relator's allegations of perjury supported only by his own assertions are insufficient to grant the writ. Likewise, relator's allegation that the Commonwealth's witnesses perjured themselves and that the prosecuting authorities,

particularly the Chief of Police, knowingly and intentionally used the perjured testimony is not sufficient. United States v. Mathison, 7 Cir., 1958, 256 F.2d 803; United States ex rel. Swaggerty v. Knoch, 7 Cir., 1957, 245 F.2d 229; United States v. Spadafora, supra.

The introduction of perjured testimony without more does not violate the constitutional rights of the accused. It is the knowing and intentional use of such testimony by the prosecuting authorities that is a denial of due process of law. Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791. Moreover, the relator has the burden of showing not only that perjured testimony was used to convict him but that it was knowingly and intentionally used by the prosecuting authorities. Lister v. McLeod, 10 Cir., 1957, 240 F.2d 16; United States v. Jakalski, supra. In this he has failed at the hearing as well as in his request for further hearing.

Relator also failed to prove that he was the victim of fundamental unfairness or other violation of his rights under the Fourteenth Amendment. A competent lawyer had been appointed for him by the State Court but relator refused his assistance as he has consistently done since.

Payment of Witness Fees and Costs.

The following question has developed from this habeas corpus proceeding:

When a relator, a state prisoner, in a habeas corpus proceeding, is granted permission to proceed in forma pauperis, should the United States be required to advance fees and transportation costs of relator's attending witnesses subpoenaed by the United States Marshal pursuant to order of court?

When this court decided that relator had by his petition and supplemental petition sufficiently raised questions of

9. See copies of letters annexed to relator's Requests filed February 6, 1959.

10. Cora Helwig, now married to Benjamin Blakely, was subpoenaed but a doctor's certificate attested to her inability to be present at the hearing. Even if she were submitted to further examination by relator, it could hardly be expected that he could do more than further expose this defense witness as incredible and unreliable.

fact which entitled him to a hearing,[11] it was, of course, obvious that relator should be accorded the opportunity to prove his allegations. This could only be done by ordering the Marshal to subpoena those witnesses from whom he expected favorable testimony.[12]

In the habeas corpus statute of 1867, 14 Stat. 385, 28 U.S.C.A. § 2241 et seq., Congress decided that a district court should pass on federal constitutional questions presented by a state prisoner after his claims had been considered by the State Courts. This command would be an empty gesture if an impoverished and friendless prisoner in the penitentiary, unable to interview witnesses, was denied the right to subpoena those persons he expected would prove the alleged violations.

After a preliminary hearing, the court ordered the Marshal to serve subpoenas on nine of the twenty-four witnesses relator desired, and ordered "that all costs and witness fees shall be paid by the United States."[13] After the order was filed, the Marshal advised that he could not pay witness fees and transportation costs without a certificate from the United States Attorney;[14] and that no funds were appropriated for this purpose. The court wrote to the United States Attorney requesting that he issue such a certificate, and the United States Attorney after consultation with his superiors advised that he had no authority to issue a certificate for payment of witness fees and transportation costs in a habeas corpus proceeding involving a state prisoner. (See copies of letters in

appendix.) The Marshal served the subpoenas and all the witnesses except Cora Helwig Blakely appeared. The three police officers from Ohio requested in open court that their transportation costs be paid, and the court is advised that the other five attending witnesses unsuccessfully sought payment of their fees and mileage from the Clerk and the United States Marshal.

▉ The United States is an interested party in a state habeas corpus proceeding. The petition is properly brought by relation in the name of the United States. Fees and mileage need not be tendered to witnesses subpoenaed on behalf of the United States. § 1825, 28 U.S.C.A.[15] A witness who ignores such a subpoena would be subject to a charge of contempt.

There does not appear to be any specific provision in the Judicial Code requiring the United States to pay or advance fees and mileage to witnesses responding to a subpoena issued by order of court at the request of a state prisoner, permitted to proceed in forma pauperis, seeking a writ of habeas corpus for violation of his federal constitutional rights. Section 1915, 28 U.S.C.A. comes closest to authorizing such payment. This section in its pertinent parts provides:

"(a) Any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees and costs or security therefor, by a citizen who

11. See Pyle v. Kansas, 317 U.S. 213, 63 S.Ct. 177, 87 L.Ed. 214; United States v. Derosier, 3 Cir., 1956, 229 F.2d 599.

12. All the subpoenaed witnesses resided within 100 miles of the court.

13. See Memorandum and Order filed December 23, 1958.

14. Section 1825, 28 U.S.C.A. provides: "In any case wherein the United States or an officer or agency thereof, is a party, the United States marshal for the

district shall pay all fees of witnesses on the certificate of the United States Attorney or Assistant United States Attorney, and in the proceedings before a United States Commissioner, on the certificate of such commissioner.

"Fees and mileage need not be tendered to the witness upon service of a subpoena issued in behalf of the United States or an officer or agency thereof."

15. Ibid.

makes affidavit that he is unable to pay such costs or give security therefor. * * *

\* \* \* \* \* \*

"(c) The officers of the court shall issue and serve all process, and perform all duties in such cases. Witnesses shall attend as in other cases, and the same remedies shall be available as are provided for by law in other cases.

\* \* \* \* \* \*

"(e) Judgment may be rendered for costs at the conclusion of the suit or action as in other cases, but the United States shall not be liable for any of the costs thus incurred. If the United States has paid the cost of a stenographic transcript or printed record for the prevailing party, the same shall be taxed in favor of the United States."

Of course, it might be argued that the attending witnesses did not help relator or that the court was wrong in ordering the subpoenas, but in this case it could not be foretold how the witnesses would testify or that they would fail to prove the facts relator swore he expected them to prove.

 We think it is implicit by these provisions that a state prisoner, permitted to proceed in forma pauperis, is entitled to have his witnesses subpoenaed by the United States Marshal; that the witnesses so subpoenaed by order of court shall attend as in other cases, and the same remedies shall be available as are provided by law in other cases. "Other cases" include criminal cases wherein the court is authorized to order subpoenas issued on behalf of an indigent federal prisoner at the expense of the United States. Rule 17(b), Fed.R.Crim.P., 18 U.S.C.A.[16] In case of conviction the court may sentence the defendant to pay the costs, or it may not; nonetheless, payment of the defendant's witnesses is assured.

 We think that the United States is as vitally interested in protecting a pauper from violation of his constitutional rights in a state prosecution as any indigent defendant in a federal prosecution. If relator is successful and the writ is granted, the costs should be ultimately imposed upon the state, but if unsuccessful, upon relator. But, in the meantime, the United States should advance such costs to the subpoenaed witnesses who attend the hearing, and enforce its claim, if it can, against the losing party. We do not think it is fair or just to force witnesses by subpoena to come to these hearings, sometimes at considerable inconvenience and expense, without payment of their fees and mileage. This is especially apparent when the witness is also liable to the penalties of contempt if he refuses to obey the subpoena.

An order will be entered requiring the United States to advance witness fees and costs of transportation to the attending witnesses.

### Conclusions of Law.

1. The Commonwealth did not suppress vital evidence favorable to relator at his trial.

2. Relator was not denied due process of law in violation of the Fourteenth Amendment.

3. A writ of habeas corpus should be denied.

4. Witness fees and transportation costs of attending witnesses subpoenaed on behalf of relator pursuant to order of court should be advanced by the United States.

5. Costs should be paid by relator.

---

16. Estep v. United States, 5 Cir., 1958, 251 F.2d 579, at page 582, wherein it is indicated that the district court must order the issuance of subpoenas in behalf of indigent litigants at government expense, in civil proceedings, similar to that provided in criminal proceedings, but with discretion to prevent abuse of its process.

Order of Court.

And Now, to wit, this 2nd day of March, 1959, after hearing and consideration of the trial transcript, the petitions for the writ, and the relator's numerous briefs, arguments and requests, It Is Ordered, Adjudged and Decreed that relator's application for writ of habeas corpus be and the same hereby is denied at the cost of the relator, Roy Helwig.

It Is Further Ordered that the United States advance fees and costs of transportation due the witnesses attending the habeas corpus hearing in response to subpoenas issued pursuant to order of this court.

Appendix.

"United States District Court
"Western District of Pennsylvania
 "Pittsburgh 19
"Chambers of
RABE F. MARSH
 Judge
 "December 24, 1958
"Hubert Teitelbaum,
 United States Attorney
"600 New Federal Building
"Pittsburgh, Pennsylvania

"Dear Mr. Teitelbaum:

"Re: United States ex rel. Roy Helwig
 v.
 Angelo C. Cavell, Warden
 Civil 17415

"I have issued an order, inter alia, requiring the Marshal to serve nine witnesses requested by relator for his habeas corpus hearing on January 12, 1959, at the cost of the United States Government. The relator is proceeding in forma pauperis. The Marshal advises that he cannot make service and advance transportation costs and witness fees without a certificate from the United States Attorney.

"I realize that you have no interest in the case because the relator is a state prisoner. However, I am requesting you to issue the certificate to the Marshal in order that the relator may have his witnesses in court on the day of the hearing.

"Very truly yours,
 "(signed) Rabe F. Marsh
 "United States District Judge.
"cc:
"Roy Helwig, C-4109
"P. O. Box 9901
"Pittsburgh 33, Pa.
"Richard D. Agresti,
 Asst. District Attorney
"Court House
"Erie, Pennsylvania"

"United States Department of Justice
 "United States Attorney
 "Western District of Pennsylvania
 "Pittsburgh 19, Penna.
 "January 2, 1958
Please refer
to initials
and number
HIT:mmc

"Honorable Rabe F. Marsh
"United States District Judge
"New Federal Building
"Pittsburgh 19, Penna.

"In re: United States ex rel. Roy
 Helwig v. Angelo C. Cavell,
 Warden
 Civil Action No. 17415
"Dear Judge Marsh:

"I make reference to your letter of December 24, 1958 in the above captioned matter, wherein you requested that I issue a certificate to the Marshal in order that the relator may have his witnesses in court on the day for hearing.

"I am advised by the Administrative Office of the United States Department of Justice that no authority exists for such payments. Although the Marshal could execute the subpoenas at your direction there is no basis for advancing transportation costs and witness fees.

"The only provision for such payment to witnesses on behalf of persons proceeding in forma pauperis is under specific statute or under Rule 17(b) of the Federal Rules of Criminal Procedure. No

such special acts appear to apply to a habeas corpus action in forma pauperis where a state authority is the representative. Also this is not governed by Rule 17(b). For this reason payment to the witnesses cannot be made by the Department of Justice.

"At the present time a case has arisen in New York involving this same problem; and at the request of the Administrative Office of the United States Courts, the Department of Justice has requested a ruling from the Comptroller General as to the applicability of any statutes that would permit such a payment. After I receive advice that the ruling of the Comptroller General has been received and if it varies from the opinion of the Department of Justice I shall be happy to advise you of it.

 "Sincerely yours
 "(signed) Hubert I. Teitelbaum
 "Hubert I. Teitelbaum
 "United States Attorney"