**UNITED STATES of America**

v.

**Billie A. BRYANT.**

**Crim. No. 349–69.**

United States District Court,
District of Columbia.

April 16, 1970.

Leroy Nesbitt, Theodore Christensen, Washington, D. C., for defendant.

Richard Hibey, Asst. U. S. Atty., Washington, D. C., for the United States.

## MEMORANDUM

GESELL, District Judge.

This was a First Degree Murder case involving the killing of two FBI agents. Defendant claimed he acted in self-defense and alternatively interposed a defense of insanity. He was convicted of both murders and given consecutive life sentences. The matter now before the Court concerns payment for extensive expert services required in Bryant's defense.

On the issue of self-defense, ballistics proof was highly significant and the defense properly requested expert advice to check the FBI findings. Several guns and bullets were involved. H. B. White Laboratories has submitted a claim for $923.70 to cover this phase, which in-cludes testimony by one of the Laboratories' experts.

The insanity defense required teams of experienced psychologists and psychiatrists as well as special neurological, blood and other tests. In some instances the only available experts lived in other cities. Four doctors have submitted claims for this work ranging from $3,-038.12 to $585.50, depending on the nature and amount of time involved.

In view of the gravity of the charges and the possibility that the jury might, in the special circumstances of the case, have returned a capital verdict, the Court authorized able defense counsel to retain experts knowledgeable in these fields in order to provide full opportunity for extensive study of the physical facts and defendant's background and medical history. Numerous tests were made under carefully controlled conditions, some in consultation with the Government's experts recruited from the FBI and St. Elizabeth's Hospital. All of the defendant's experts were subpoenaed for the trial and several testified. Background material was also later provided the Court by defense psychiatrists in aid of sentencing.

The Court has carefully examined the vouchers submitted and conferred frequently with counsel under whose direction the work was done. It is satisfied that the time logged in each instance was constructively used and necessary for the full preparation of the defense and that hourly rates are reasonable and fair.

The amounts involved exceed sums payable under the Criminal Justice Act to such experts. 18 U.S.C. § 3006A. The Government urges that the $300 limitation in the Criminal Justice Act prohibits payments in excess of that amount to each claimant. This position ignores the still viable provisions of Rule 17(b) of the Federal Rules of Criminal Procedure. Payment shall accordingly be made under this Rule for that portion of each claim which exceeds $300, the maximum payable under the Criminal Jus-

tice Act. Each claim will be honored for $300 under the Act.

Ample authority for this action will be found in the Memorandum of Points and Authorities, appended hereto, submitted by defense counsel in support of the vouchers. The Court notes that denial of these claims would raise issues of serious constitutional proportions and that this ruling is best adapted to deal with the fiscal controversy between the Administrative Office of the United States Courts and the Department of Justice without having to resolve these serious constitutional questions. See Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963); Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L. Ed. 891 (1956).

Submit appropriate order covering the five vouchers involved totalling $6,303.-27.

## APPENDIX
### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA
v. } Criminal No. 349–69
BILLIE AUSTIN BRYANT

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DIRECT PAYMENT PURSUANT TO FEDERAL CRIMINAL RULE 17(b)

1. The Criminal Justice Act, 18 U.S. C. 3006A, adopted August 2, 1964, providing investigative, advisory or consultive services to indigent defendants, in pertinent part provides:

"Counsel for a defendant who is financially unable to obtain investigative, expert, or other services necessary to an adequate defense in his case may request them in an ex parte application. Upon finding, after an appropriate inquiry in an ex parte proceeding, that the services are necessary and that the defendant is financially unable to obtain them, the court shall authorize counsel to obtain the services on behalf of the defendant. * * The compensation to be paid to a person for such service rendered by him to a defendant under this subsection * * * shall not exceed $300, exclusive of reimbursement for expenses reasonably incurred."

Prior to the insertion of the above provision into the Law in 1964 all expert witnesses assisting indigent defendants were compensated under Federal Criminal Rule 17(b) exclusively. The funds available for payment to witnesses were appropriated for that purpose to the United States Department of Justice and the Department effected their disbursement. In one local case according to an Official in the Administrative Office, a doctor assisting an indigent defendant was paid over $2,000 by the United States Department of Justice pursuant to the terms of Rule 17(b).

2. After the enactment of the above quoted subsection the Department of Justice has taken the position that the statute, enacted subsequent to the Supreme Court's adoption of Rule 17(b) and being more specific in its terms, supercedes the Rule in situations in which it applies. Apparently this is the Department of Justice's current position relative to the compensation of expert witnesses assisting indigent defendants, and therefore the instant request, without more, would be denied by the Department of Justice and directed to the Ad-

ministrative Office of the United States Court for payment pursuant to the above quoted subsection. Counsel submits that the position taken by the Department of Justice with respect to the compensation of experts assisting indigent defendants is contrary to the intent of the Congress and in practical effect the Department's policy operates to deny indigent defendants equal protection of law.

Federal Criminal Rule 17(b) republished with substantial amendment on July 1, 1966, almost two years after the adoption of the Criminal Justice Act provides:

" * * * the court shall order at any time that a subpoena be issued for service on a named witness upon an ex parte application of a defendant * *. If the court ordered the subpoena to be issued the cost incurred by the process and the fees of the witness so subpoenaed shall be paid in the same manner in which similar costs and fees are paid in case of a witness subpoenaed in behalf of the government."

Thus, Rule 17(b) explicitly provides that the costs and fees chargeable to the Government thereunder "shall be paid in the same manner in which similar costs and fees are paid in case of a witness subpoenaed in behalf of the government." The language is unequivocal; therefore, since the witnesses in the captioned case were summoned in accordance with the procedures set out in the Rule it follows *a fortiori* that it is the responsibility of the Department of Justice to effect the requested compensation.

3. The Comptroller General has ruled that Rule 17(b) expenses are a liability of the Department of Justice, and has extended that liability even to habeas corpus proceedings which are civil in nature on the basis of the relationship of those proceedings to criminal cases. In its rulings the office of Comptroller General has dealt specifically with cases involving the appointment of medical experts to assist indigent defendants. The basic ruling is set out at Comp.Gen.Dec., B–139703, Aug. 27, 1959, where it was held that the fees and expenses of expert witnesses assisting indigent defendants were properly compensable from appropriations of the Department of Justice because:

" * * * the function of producing witnesses and evidence is not incident to maintaining a Court but, rather, is typically a function of the Department (of Justice) under its paramount obligation to present the case to the court in seeking that justice be done." (See P. 4)

The Administrative Office of the United States Courts, charged with the responsibility of administering the terms of the Criminal Justice Act has taken the position that the services other than counsel provided by the Act are limited to the pretrial phase of the case, intended to assist the defendant and/or his counsel in trial preparation. The Administrative Office contends that the Department of Justice is obligated under Rule 17(b) for the cost of producing a witness or evidence for hearing or trial through an order issued on the motion of an indigent defendant. The Administrative Office contends that this accommodates the operation of both the statute and the Rule without overlapping or implied repeal.

The position of the Administrative Office is supported by the fact that the Congress each year appropriates funds for the Department of Justice earmarked to cover the expenses of witnesses including expert witnesses. To interpret the passage of the Criminal Justice Act as an implied repeal of the operation of Rule 17(b) unconstitutionally limits benefits Congress has made available to indigent defendants. (See Appropriation Act, Dept. of Justice Title II, 83 Stat. 408).

Counsel submits that the Administrative Office view is consistent with the intent of Congress in the adoption of the Criminal Justice Act. The spirit of the Criminal Justice Act is best reflected in the words of the late John F. Kennedy in

a letter dated March 8, 1968, which accompanied the Criminal Justice Act:

In the typical criminal case the resources of the Government are pitted against those of the individual. To guarantee a fair trial under such circumstances requires that each accused person have ample opportunity to gather evidence, and prepare and present his cause. Whenever the lack of money prevents a defendant from securing an experienced lawyer, trained investigator or technical expert, an unjust conviction may follow.

Respectfully submitted,

THEODORE J. CHRISTENSEN
Legal Aid Agency
310 Sixth Street, N. W.
Washington, D. C. 20001
Counsel for the Defendant