Travis HUDSON, Plaintiff,

v.

INGALLS SHIPBUILDING DIVISION, LITTON SYSTEMS, INC., Defendant.

Civ. A. No. 80–0760–H.

United States District Court, S. D. Alabama, S. D.

June 18, 1981.

James H. Frost, Mobile, Ala., for plaintiff.

Karl Wiesenburg, Pascagoula, Miss., Grover E. Asmus, II, Mobile, Ala., for defendant.

## ORDER

HAND, District Judge.

■ The motion which Travis Hudson made on June 8, 1981 to subpoena Willie L. Ransom to testify in his behalf in this Title

VII action is denied. No statutory provisions allow this Court to subpoena witnesses in a civil case at the government's expense where the plaintiff is proceeding in forma pauperis unless that case is a habeas corpus petition or a motion to reduce, vacate, or modify a sentence under 28 U.S.C. § 2255. *Marks v. Calendine*, 80 F.R.D. 24 (N.D.W.V. 1978); 53 Comp.Gen. 638, 643–45 (1974).[1]

■ Local Rule 18 is consistently read with the absence of statutory authority for this Court to subpoena witnesses at government expense for pro se litigants in Title VII cases. Local Rule 18 provides:

> [i]f an indigent party in a civil action, or an indigent defendant in a criminal action, requires witnesses to be present at any hearing or trial, at government expense, the party must make an affidavit not less than two weeks before trial date setting forth the name and address of such witness and a brief statement of the facts about which the party expects each witness to testify. In criminal cases, the petition and affidavits must be made *ex parte* to the Court.

Local Rule 18 (witnesses for indigents). This rule, consistently read with 28 U.S.C. § 1825, provides for the payment of witness fees only in habeas corpus actions and civil actions under 28 U.S.C. § 2255.

## APPENDIX

Witnesses—Testimony Perpetuation—Appropriation Chargeable

Since 39 Comp.Gen. 133 holds that the expense of perpetuating and authenticating the testimony given at a deposition is payable from the same funds as fees for witnesses, whereas 50 *id.* 128 holds that the Criminal Justice Act of 1964, as amended, 13 [18] U.S.C. 3006A, provides the sole source of funds for eligible defendants to obtain the expert services necessary for adequate defense, the stenographic and notarial expenses incurred to perpetuate and authenticate the testimony of expert witness-

---

1. The full text of the Comptroller's Opinion is set out in full for the convenience of the reader: (appended).

es for such defendants should henceforth be paid by the Administrative Office of the U. S. Courts from funds available to it, and not by the Department of Justice. 39 Comp. Gen. 133 modified.

### Attorneys—Fees—Overhead Expenses Part of Fee

As normally an attorney appointed under the Criminal Justice Act of 1964, 18 U.S.C. 3006A, is expected to use his office resources, including secretarial help, to take dictated statements, and these overhead expenses are reflected in the attorney's statutory fee, he may not be separately reimbursed for the expenses except in unusual situations where extraordinary overhead-type expenses are incurred in order to prepare and conduct an adequate defense, in which case such services, if otherwise eligible, may be considered "other services necessary for an adequate defense" under 18 U.S.C. 3006A(e) and be paid accordingly.

### Courts—Criminal Justice Act of 1964—Civil Rights Actions v. Habeas Corpus Proceedings

While not disputing the position of the Department of Justice that there are similarities in some cases between prisoner civil rights actions brought under 42 U.S.C. 1983 and habeas corpus proceedings, the major similarity is that in both cases the petitioners are in custody, and, therefore, for the purposes of paying expenses under the Criminal Justice Act of 1964, 18 U.S.C. 3006A, the civil rights petitioner may not be brought within the rationale of 39 Comp. Gen. 133, concerning the payment of expenses for certain habeas corpus petitioners, in the absence of authorizing legislation.

In the matter of *forma pauperis* proceedings, February 28, 1974:

The Acting Assistant Attorney General for Administration has requested our views on two questions concerning the responsibility for payment of certain expenses in *forma pauperis* proceedings. The second question, relating specifically to the applicability of the Criminal Justice Act of 1964, 18

U.S.Code 3006A, to civil rights proceedings under 42 U.S.C. 1983 brought by certain persons in custody, was also raised in an earlier letter to us from the Chief Judge, United States District Court for the Eastern District of Pennsylvania. A copy of this decision is being sent to him.

The views of the Department of Justice (Department) and the Administrative Office of the United States Courts (AO), the two agencies most concerned with these matters, were presented to us in three letters each from the Acting Assistant Attorney General for Administration for the Department and the General Counsel of the AO.

The initial question raised is:

First, where a criminal defendant in the U.S. District Court is allowed to proceed in *forma pauperis*, is the Administrative Office of the U. S. Courts or the U. S. Department of Justice responsible for the payment of stenographic and notarial expenses incident to the taking and transcribing of interviews of fact witnesses incurred on behalf of the pauper? Would the responsibility for payment be the same if the witnesses were expert witnesses? If depositions had been taken instead of merely interviews, would the responsibility for payment still be the same?

In part, this question concerns the effect of the Criminal Justice Act of 1964 (CJA), as amended, 18 U.S.C. 3006A upon our decision reported in 39 Comp.Gen. 133 (1959). We held therein that travel and subsistence expenses incurred by an indigent defendant's attorney attending a deposition may be regarded as expenses incident to the responsibility of the court to assure defendants an adequate forum and, therefore, that such expenses are for payment by the AO under Rule 15(c) of the Federal Rules of Criminal Procedure. Also, after review of the language of Rule 17(b) of the Federal Rules of Criminal Procedure and the "Department of Justice Appropriation Act, 1959" under the heading "Fees and Expenses of Witnesses" we stated at pp. 136–137:

With regard to compensation and expenses of witnesses—whether fact witnesses or experts—subpoenaed on behalf of an indigent defendant the conclusion appears required, on the basis of the language quoted, that such items are payable out of such appropriations to the Department of Justice. Nor do we find any basis upon which it might be held that such compensation and expenses of witnesses subpoenaed on· behalf of an indigent ought to be paid by the Administrative Office of the United States Courts. Moreover, this conclusion would apply to deponents' fees as well as fees for witnesses appearing in court, since Rule 17(b) makes no distinction between the two; and, as shown, it is that rule which is controlling. The function of producing witnesses and evidence is not incident to maintaining a court but, rather, is typically a function of the Department under its paramount obligation to present the case to the court in seeking that justice be done.

We noted further that "Rule 17(b) refers to the subpoenaing of witnesses and provides only for payment of the costs incurred by the process and the fees of the witnesses subpoenaed" and that there is no specific provision for the payment of stenographic or notarial expenses incurred in connection with the taking of depositions. We concluded that:

> * * * since the testimony of a witness subpoenaed under Rule 17(b) would be useless if it were not transcribed and notarized, and these costs are part and parcel of the purpose for which the deponent is subpoenaed in the first instance, it must be concluded that, in view of the provision to pay the witness fees involved, the expense of perpetuating and authenticating his testimony is embraced as part of "the costs incurred by the process." And since these expenses are borne by appropriations of the Department of Justice where witnesses are subpoenaed on behalf of the Government, it follows, under the direction contained in Rule 17(b), that where the deponent is subpoenaed on behalf of an indigent defendant expenses of stenographic and notarial services must also be paid by the Department 'in a like manner, id., p. 137.

The CJA provides for furnishing representation for persons charged with felonies or misdemeanors (other than petty offenses) who are financially unable to obtain adequate representation, including the appointment and payment of private attorneys and payment of certain expenses incurred. Subsection (d) of the CJA establishes the maximum hourly rates to be paid to an appointed attorney and authorizes reimbursement to him for expenses reasonably incurred, including the costs of transcripts authorized by the United States magistrate or the courts. Subsection (e) authorizes expenditures—including reimbursement for expenses reasonably incurred—for "investigative, expert, or other services necessary for an adequate defense" for persons who are financially unable to obtain such services.

The Department contends that the effect of these provisions of the CJA is to modify our decision in 39 Comp.Gen. 133, supra, with respect to payment of stenographic and notarial expenses while the AO states that the CJA does not change the manner in which these expenses should be handled.

In 50 Comp.Gen. 128 (1970) we held that a fee of an expert (there, a psychiatrist) called to testify on behalf of an accused entitled to expert services under subsection (e) of the CJA is for payment pursuant to that act. We stated that the legislative history of the act is so persuasive as to warrant the conclusion that it preempts the payment of expert witness fees to the exclusion of the general provisions of Rule 17(b), notwithstanding the $300 fee limitation in subsection (e) of the act, and that where those fees exceed the maximum allowable under the CJA, the Department is not obligated under Rule 17(b) to pay all or part of those expenses. (See, however, *United States v. Bryant*, 311 F.Supp. 726 (D.D.C.1970) cited in 6 A.L.R.Fed. 1007 at sections 3 and 7 for the view that the authority in Rule 17(b) should be used to

supplement the maximum allowable under the CJA.)

Thus, we held in our 1970 decision that fees incurred by eligible defendants for expert services were to be paid by the AO out of funds appropriated to carry out the CJA and in our 1959 decision that stenographic and notarial services are necessary to the taking of a deposition and that the expenses incurred in perpetuating and authenticating testimony should be considered part of the "costs incurred by the process." Accordingly, we feel that stenographic and notarial fees and expenses incurred in taking the depositions of expert witnesses on behalf of defendants entitled to such services under the CJA should be paid by the AO. Payment of the fees of fact (nonexpert) witnesses, and the attendant stenographic and notarial fees, is not affected by the CJA and should continue to be from funds appropriated to the Department for that purpose. (Our decision in 39 Comp.Gen. 133 is modified accordingly.)

The ability to interview potential witnesses—as distinguished from taking their depositions—may frequently be crucial to the preparation of a defense. In *United States v. Germany,* 32 F.R.D. 421 (M.D.Ala. 1963), the court dismissed the case and discharged the defendant from custody since neither the Department nor the AO would authorize payment to the defense attorney of what the court termed the necessary and essential expenses of interviewing material witnesses. See also *Lee v. Habib,* 424 F.2d 891 (D.C.Cir.1970), referring, in footnote 28, to subsection (d) of the CJA in connection with the statement that the State must provide funds to pay for defense counsel's trips to investigate the case and interview key witnesses. Both the Department and the AO recognize the importance of these preliminary interviews. They also agree that the transcribing of interviews is generally handled by counsel's own secretarial associates and that the cost thereof is not separately compensable under the CJA. In this regard we have been informally advised by staff members of both agencies that normally a word-for-word transcription of an interview is not required and that

a statement dictated by the attorney summarizing the interview and, perhaps, signed by the interviewee and notarized will generally suffice.

The issue presented is whether stenographic expenses incurred while interviewing witnesses in cases involving unusual circumstances may be reimbursed and, if so, from what source. The Department suggests that the case of *United States v. Schenkel,* D.C.Ind. (1972), No. TII–72–CR–15, presents such an unusual situation. In that case the court approved the motion of defendant's counsel for authority to employ a reporter to take and transcribe the statements of fifteen potential defense witnesses and approximately ninety potential Government witnesses which the defense counsel proposed to interview. After completion of his work, the reporter submitted a claim in the amount of $848 for services and expenses, which claim was denied by the Chief Auditor of the AO.

The Department takes the position that the attorney should not be required to pay such an extraordinary expense from his hourly rate and that if reimbursement is not allowed, there is the possibility that defendant's counsel would forego conducting interviews rather than incur such expense, with an obvious effect on the presentation of an adequate defense. The Department states that it does not attempt to distinguish between expenses of transcribing interviews which are for authorization under subsections (d) or (e) of the CJA and the nonreimbursable expenses of secretarial help, stating that such distinctions can be made by the court in each case.

The AO does not discuss the *Schenkel* case or similar situations directly. Rather, it notes that "except in unusual cases" the CJA attorney utilizes his regular office staff and that expenses incurred thereby represent overhead and as such are reflected in the hourly statutory fee the attorney is entitled to be paid. However, one unusual situation alluded to by the AO involves the need of an attorney to use stenographic services while traveling overseas on behalf of the defendant.

We are in agreement with both agencies that normally an attorney representing a defendant under the CJA will be expected to use his usual secretarial resources to take down dictated statements and to perform other routine tasks. Expenses so incurred are part of the attorney's overhead and the legislative history of the CJA makes it clear that overhead expenses are reflected in the statutory fee and are not subject to separate reimbursement from CJA funds.

It is also clear, however, that there may be exceptional situations where the attorney may need to incur extraordinary expenses for stenographic (or other secretarial-type) services in order to prepare and conduct an adequate defense. When the attorney can demonstrate to the court that such extraordinary expenses are necessary, we believe that payment of the expenses so incurred, where reasonable in amount, should be made from funds appropriated to carry out the CJA.

Subsection (e) describes "services other than counsel" as "investigative, expert or other services necessary for an adequate defense." The Conference Report describes those services as including "fingerprints, psychiatric, ballistic, investigative, etc." services. 1964 U.S.Code Cong. and Adm. News [2990], 3000, 3002. See also *United States v. Largan*, 330 F.Supp. 296, 299 (S.D. N.Y.1971). Professor Oaks in "Obtaining Compensation and Defense Services Under the Federal Criminal Justice Act," in Cipes (Ed) Criminal Defense Techniques (1969) Sec. 7.16[4], quoted in 8 Moore's Federal Practice—Cipes, Criminal Rules, (2d ed.) p. 15–13 (1973 supp.) states that the cost of stenographic services is payable under subsection (e). *Cf.* "Annotation: Construction and Application of Provision in Subsection (e) of Criminal Justice Act of 1964 (18 U.S.C. 3006A(e)) Concerning Right of Indigent Defendant to Aid in Obtaining Services of Investigator or Expert." 6 ALR Fed. 1007. Considering the above, and although the matter is not free from doubt, it is our view—subject to what is set forth herein—that stenographic services and any similar services may be considered one of the "other services necessary for an ade-

quate defense" for purposes of payment under subsection (e). As to such expenses, however, we believe that the AO should either issue guidelines setting forth criteria for the use of the Federal Courts—such as whether the expense involved is normally charged to paying clients as a separate expense item or is absorbed as overhead in an hourly rate—against which requests for approval of these extraordinary expenses may be considered, or seek legislation specifying the criteria to be used.

The first question is answered accordingly.

The second question raised by the Acting Assistant Attorney General for Administration is:

> Where a prisoner in a civil rights action under 42 U.S.C. 1983 in the U. S. District Court is allowed to proceed in *forma pauperis*, is the Administrative Office of the U. S. Courts or the U. S. Department of Justice responsible for the payment of any expenses involving fact witnesses and expert witnesses incurred on behalf of the pauper?

The issue of the payment of witness fees and marshal's costs by the United States in indigent prisoners' civil rights cases was earlier raised with this Office by the Chief Judge, United States District Court, Eastern District of Pennsylvania. As a result of the Chief Judge's request for our opinion, we have, in addition to the views of the Acting Assistant Attorney General for Administration of the Department and the General Counsel of the AO, the views of the Legal Counsel, United States Marshal Service and of the Assistant Attorney General, Office of Legal Counsel of the Department. As noted above, the instant decision will also serve as a response to the Chief Judge's inquiry.

As both the Department and the AO indicate, there is presently no clear statutory (or administrative) authority for the Government to pay such expenses. However, the Department takes the position that prisoner civil rights proceedings are analogous to habeas corpus proceedings.

With respect to the payment of witness fees on behalf of indigent defendants in habeas corpus proceedings, we stated in 39 Comp. Gen. 133, 139, *supra*, that

> * * * habeas corpus proceedings are civil actions is well settled. *Ex parte Tom Tong*, 108 U.S. 556 [2 S.Ct. 871], 27 L.Ed. 826. While we know of no basis upon which the United States may be charged witness costs in civil proceedings, the writ of habeas corpus is so related to the protection of constitutional rights afforded indigent defendants by Rule 17(b), that to ignore that rule in a habeas corpus proceeding under the pauper's statute may well raise grave questions of constitutionality.

That view was given statutory status by the enactment of Public Law 89–162, 79 Stat. 618, approved September 2, 1965, which amended 28 U.S.C. 1825 and specifically provided for the payment of such expenses.

The Department, citing *Wilwording v. Swenson*, 404 U.S. 249 [92 S.Ct. 407], 30 L.Ed.2d 418 (1971), states that the Supreme Court has noticed the "essential habeas corpus nature" of civil rights actions and contends that indigent prisoners should be afforded the ability to secure the attendance of witnesses in civil rights suits initiated by them.

The AO, however, contends that the result suggested by the Department is a matter of policy, appropriate for the legislative process alone to resolve. It does not agree that suits brought by prisoners concerning their living conditions, food, institutional discipline, etc., are like habeas corpus proceedings other than that in both cases the petitioners are in custody. The AO cites the case of *Preiser v. Rodriquez*, 411 U.S. 475 [93 S.Ct. 1827, 36 L.Ed.2d 439] (1973), distinguishing, to some extent, between habeas corpus and civil rights proceedings; the pendency of certain bills (such as 93d Cong., S. 2610 and H.R. 8848) which would accomplish the results urged by the Department; and the proposed new "Rules Governing Habeas Corpus Proceedings" which would leave actions brought under 42 U.S.C. 1983 to be governed by the Federal Rules of Civil Procedure, as support for its position.

The 1973 Annual Report of the Director of the Administrative Office of the United States Courts discloses the magnitude of the problem here presented. Seventeen and one-half percent of all civil cases filed in fiscal year 1973 in United States District Courts were prisoner petitions. Prisoner petitions on civil rights grounds increased, for Federal prisoners, from 15 in 1966 to 414 in 1973 and petitions filed by State prisoners increased from 218 to 4,174 over the same period. In addition, many petitions filed for other types of relief (such as habeas corpus petitions) are, both in effect and in their treatment by the courts, civil rights actions. In the Annual Report, the AO states that alternative methods for handling prisoner grievances should be explored. See also *Rodriguez v. McGinnis*, 456 F.2d 79 (1972).

While we do not dispute the fact that in many cases there may be substantial similarities between prisoner civil rights actions and habeas corpus proceedings, we are in basic agreement with the views presented by the AO's General Counsel in his letter to us of January 31, 1973, in which he stated with reference to our decision reported in 39 Comp.Gen. 133, *supra*:

> The Comptroller General relied upon *United States v. Cavell*, 171 F.Supp. 417 (D.C.Penn., 1959) to justify this language. The court in the *Cavell* case expressly limited itself to criminal matters by stating that it was "protecting a pauper from violation of his constitutional rights in a state prosecution". *U. S. v. Cavell supra*, at 424.

> Neither the Comptroller General's nor the *Cavell* court's language can be used to justify the payment of witness fees and costs in civil rights cases. When an individual files a civil rights action, even if he is a prisoner, he does not do so as an indigent defendant, but as a plaintiff in a civil suit. He is not challenging either the legality of his incarceration or the regularity of his prosecution. These ac-

tions are in no way related to the criminal process and cannot justify usage of the Federal Rules of Criminal Procedure. The fact that they are filed by prisoners does not determine the nature of the action. Any citizen or person within the jurisdiction of the United States can file the type of action prisoners ground on. 42 U.S.C. § 1983; *Cruz v. Beto*, 405 U.S. 319, 321–322 [92 S.Ct. 1079, 1081–1082, 31 L.Ed.2d 263] (1972). Prisoners use § 1983 to protect rights such as access to the mails. *Lee v. Tahash*, 352 F.2d 970 (C.A.8, 1965); compensation, *Sigler v. Lowrie*, 404 F.2d 659 (C.A.8, 1968); Employment, *Granville v. Hunt*, 411 F.2d 9 (C.A.5, 1969); good time allowances, *Douglas v. Sigler*, 386 F.2d 684 (C.A.8, 1967); medical treatment, *Coppinger v. Townsend*, 398 F.2d 392 (C.A.10, 1968); physical accommodations, *Jordan v. Fitzharris*, 257 F.Supp. 674 (D.C.Cal., 1966); and religious practices, *Cooper v. Pate*, 378 U.S. 516 [84 S.Ct. 1733, 12 L.Ed.2d 1030] (1964). These actions entitle petitioners to damages, injunctions or other proper redress. See 42 U.S.C. 1983. If the section is erroneously used in place of a habeas corpus action, the court will treat it as such and payment for witness fees and costs would then be proper.

That specific Congressional authorization for payment of costs and fees in actions under 42 U.S.C. Ch. 21 is needed can be seen in the court's opinion in *Newman v. Piggie Park Enterprises*, 390 U.S. 400 [88 S.Ct. 964, 19 L.Ed.2d 1263] (1968). There, the court pointed out that unless Congress enacted a provision for the counsel fees, successful plaintiffs would routinely have been forced to bear their own attorney's fees and the parties would have been in a position to protect the public interest. An examination of those sections dealing with fees, process, or procedure fails to indicate any Congressional intent to pay indigent parties fees or costs for witnesses under these statutes. See 42 U.S.C. §§ 1987, 1988, 1990, 1991.

In other words, while persons who allege that their civil rights have been violated need not be prisoners in order to be eligible to bring an action pursuant to 42 U.S.C. 1983, habeas corpus proceedings are available only to those persons who are in governmental custody. 28 U.S.C. 2241(c). Further, while Congress has established a system which will enable indigent prisoners to obtain necessary financing to prosecute their writs of habeas corpus, it has not specifically provided for the payment of counsel fees or certain other expenses for indigent petitioners, whether or not they are prisoners, who allege that other civil rights have been violated.

In this regard we disagree with the opinion of the court in *McClain v. Manson*, 343 F.Supp. 382 (D.C.Conn.1972), that pursuant to subsection (g) of the CJA, civil rights and habeas corpus actions should be equated in that:

> [T]here seems to be no reason to ignore the essential habeas corpus nature of these [civil rights] petitions for purposes of the Criminal Justice Act. If statutes are to be construed broadly to protect the right of prisoners, a similar construction is appropriate to provide at least minimal compensation for those attorneys who endeavor to have those rights protected. At least this should be done in construing a statute like 18 U.S.C. 3006A(g), which makes the appointment of counsel in habeas corpus cases discretionary with the district court when it determines that the "interests of justice so require."

Rather, it is our interpretation of subsection (g) that only persons specifically mentioned therein—i. e., those subject to revocation of parole, in custody as a material witness, or seeking relief under section 2241, 2254, 2255, of Title 28 or section 4245 of Title 18, United States Code—may be furnished, at the courts' discretion, with representation. Had Congress wished to extend the coverage of this provision to civil rights petitioners, it could have done so.

In reaching this conclusion we have, of course, considered the connection between civil rights and habeas corpus actions as discussed, among other places, in the *McClain* and *Wilwording* cases, *supra*, and

in "Annotation: Habeas corpus on ground of unlawful treatment of prisoner lawfully in custody," 155 ALR 145.

Accordingly, and for the reasons discussed above, we are aware of no legal basis which would authorize either the Department or the AO to pay expenses incurred in obtaining counsel or fact or expert witnesses on behalf of an indigent prisoner who is bringing a civil rights action under 42 U.S.C. 1983. Moreover, in view of the broad policy and financial implications of authorizing such payments, we believe that proposals to accomplish the goals of such a program should be considered and authorized, if desired, by the Congress. We might suggest in this regard that the Department, which is in favor of such payments, might wish to propose authorizing legislation to the Congress.

The second question is answered accordingly.