**STATE OF UTAH; George D. Fehr; Earl E. Fehr; Joe Lyon, Jr.; and United Western Minerals Company, a corporation, Appellants,**

v.

**UNITED STATES of America, Appellee.**

No. 6677.

United States Court of Appeals Tenth Circuit.

May 10, 1962.

Grant H. Bagley, Salt Lake City, Utah (Walter L. Budge, Atty. Gen., State of Utah, Clifford L. Ashton, and Van Cott, Bagley, Cornwall & McCarthy, Salt Lake City, Utah, were with him on the brief), for appellants.

Parker M. Neilsen, Asst. U. S. Atty. (Ramsey Clark, Asst. Atty. Gen., William T. Thurman, U. S. Atty., C. Nelson Day, Asst. U. S. Atty., Roger P. Marquis, and A. Donald Mileur, Attorneys, Department of Justice, Washington, D. C., were with him on the brief), for appellee.

Before BRATTON, HUXMAN, and BREITENSTEIN, Circuit Judges.

BRATTON, Circuit Judge.

In United States v. Utah, 283 U.S. 64, 51 S.Ct. 438, 75 L.Ed. 844, sometimes hereinafter referred to as the earlier case, it was determined that the San Juan River from the mouth of Chinle Creek downstream to its confluence with the Colorado River, a distance of 133 miles, was non-navigable at the date of the admission of Utah to the Union on January 4, 1896. That case was decided in 1931.

In 1959, the United States instituted in the United States Court for Utah this action to quiet title in the United States to the land constituting the bed of the San Juan River in Utah from the boundary line between Colorado and Utah downstream to the mouth of Chinle Creek, a distance of approximately 55 miles, subject to rights of third parties not having pertinency here. Utah, George D. Fehr, Earl E. Fehr, Joe Lyon, Jr. and United Western Minerals Company, a corporation, were joined as parties defendant. By answer, Utah asserted ownership of such land, subject only to mineral leases which it had executed to the defendants George D. Fehr and Joe Lyon, Jr.; and by counterclaim it sought to have its title thereto quieted. By answer, the defendants George D. Fehr, Earl E. Fehr, Joe Lyon, Jr. and United Western Minerals Company, asserted interests in the land under mineral leases issued by Utah; and by counterclaim, they sought to have such interests quieted. A stipulation was filed in the case in which it was agreed that the first issue to be determined was whether the segment of the river in question was navigable at the time Utah was admitted into the Union. It was further agreed that if it was determined that the river

between such points was not navigable at that time, no other issues remained in the case. And it was further agreed that if it was determined that the river between such points, or any significant part thereof, was navigable on such date, certain other issues would emerge for consideration. A pretrial order was entered that there would first be a trial and determination of the question of navigability of the stream between the two points mentioned. The case was tried upon the sole issue of navigability. The court found and determined that no significant part of the river between the two points was navigable at the time Utah was admitted into the Union. Judgment was entered quieting title in the United States, and the appeal is from that judgment.

 Title to the land constituting the bed of the San Juan River within Utah passed to the State when it was admitted to the Union if the river was then navigable; and if it was not navigable, title remained in the United States. United States v. Utah, supra.

 While applying the rule sometimes presents difficulty, it has been held without deviation over a long period of time that the test for determining the question of navigability of a river is whether the stream in its natural and ordinary condition is used or is susceptible of being used as a channel for commerce over which trade and travel is conducted or may be conducted in the customary modes on water. The Daniel Ball, 10 Wall. 557, 563, 19 L.Ed. 999; The Montello, 20 Wall. 430, 22 L.Ed. 391; United States v. Rio Grande Dam and Irrigation Co., 174 U.S. 690, 698, 19 S.Ct. 770, 43 L.Ed. 1136; United States v. Cress, 243 U.S. 316, 37 S.Ct. 380, 61 L.Ed. 746; Economy Light & Power Co. v. United States, 256 U.S. 113, 121, 41 S.Ct. 409, 65 L.Ed. 847; Oklahoma v. Texas, 258 U.S. 574, 586, 42 S.Ct. 406, 66 L.Ed. 771; Brewer-Elliott Oil & Gas Co. v. United States, 260 U.S. 77, 86, 43 S.Ct. 60, 67 L.Ed. 140; United States v. Holt State Bank, 270 U.S. 49, 56, 46 S.Ct.

197, 70 L.Ed. 465; United States v. Utah, supra; United States v. Oregon, 295 U.S. 1, 14, 55 S.Ct. 610, 79 L.Ed. 1267; United States v. Appalachian Electric Power Co., 311 U.S. 377, 406, 61 S.Ct. 291, 85 L.Ed. 243. Navigability does not depend upon the mode or modes by which trade and travel is conducted upon the stream, but upon whether the stream in its natural condition is one which affords a channel for useful commerce. Brewer Oil Co. v. United States, supra. And navigability, in the sense of law, is not negatived or destroyed merely because of watercourse interruption caused by occasional natural obstructions or portages. Neither is it essential to navigability that the stream be open to navigation at all seasons of the year, or at all stages of the water. Economy Light & Power Co. v. United States, supra; United States v. Appalachian Electric Power Co., supra. But the general rule which emerges clearly from these cases considered collectively is that in order to be navigable in fact and in law, a river in its natural and ordinary condition must be used or be susceptible of use as a channel for commerce in one or more of the customary modes of trade and travel by water.

 The substance of the major attack upon the judgment is that, tested by the general rule for determining navigability of a stream, there was insufficient basis of fact for the finding and determination that the San Juan River in the area in question was not navigable at the time Utah was admitted into the Union. The trial was extended and the evidence was voluminous. Some of the witnesses were aged persons with personal knowledge of parts of the stream area in question in the late years of the last century and the early years of the present century; and the testimony given by some witnesses at the trial of the earlier case with like knowledge was read in evidence. In general, the testimony of such witnesses concerning the river related to volume, flow, width, depth, irregularity, floods, dry periods, sediment content, quick-sand, sand bars, sand

waves, shifts in channel, braided channel, freezes, use of boats, ferrying in going to and from trading posts, crossing on foot, crossing on horseback, crossing in wagons, driving animals across, and other activities. Films were exhibited. Expert witnesses testified, including persons with experience as pilots of river craft. And reports, records, and documents were placed in the record. According to these various types of evidence the weight to which it thought they were appropriately entitled, the court made these findings, among others. Except as noted in the findings, the river in the area in question has not changed its general characteristics since 1879. The river is unstable. It flows through a broad, sandy, flood plain which is from 1,000 to 5,000 feet wide and which is encased between rocky cliffs or steep slopes. The average slope of the river exceeds seven feet per mile. The river is exceedingly irregular in flow. By reason of the flat and sandy nature of the flood plain, the irregularity in flow, and the rate of fall, the river is constantly shifting its channels. It runs in a single channel for only a short distance and generally has braided channels. For most of the time and most of the distance in question, it runs in from two to many channels at the same time; and none of such channels presents an adequate or continuous channel for the passage of boats. The flow is generally low for most of the months in the year. On more than one occasion when the river ran dry, fish died in pools; and Indians found it necessary to dig in the river bed to secure water for themselves and their animals. Indians crossed the river frequently, usually on foot or on horseback; but they made and used small boats for ferrying purposes in going to and returning from trading posts. There was a gold rush along the river in about 1892 and 1893. Several hundred prospectors came into the country in search of gold. Most of them went along the stream to the point or points of activities by horseback, by burro, or by wagon; and most of their supplies were taken there in that manner. A few of the prospectors went downstream in small rowboats constructed locally and took with them small amounts of supplies, bedrolls, and equipment. None of them came upstream in boats. The record as a whole makes it clear that the court in its grapple with the ultimate question of navigability was sensitive to the general rule for determining the question; and that in reaching its conclusion upon the question, the court gave consideration to the several factors which threw light upon the question. The findings are adequately supported by the evidence and are not plainly wrong, due consideration being given to the opportunity of the court to observe the witnesses, to weigh their credibility, and to weigh their testimony, particularly the recollections of aged persons relating to long-past conditions and events. In United States v. Appalachian Electric Power Co., supra, it was stated that in some cases involving the navigability of a water course, the court entered into consideration of the facts found below to determine for itself whether the proper legal tests had been applied to the facts found. We have exercised that function in this case. We think the trial court applied the proper legal tests to the facts found; and moreover, we share with the trial court the view that the part of the river in question was in fact and in law non-navigable at the time Utah was admitted into the Union.

▆▆▆▆ The findings of fact are challenged on the ground that they fail to meet the requirements of Federal Rule of Civil Procedure 52(a), 28 U.S.C., which provides in presently pertinent part that in actions tried upon the facts without a jury, the court shall state the facts specially. It is argued that the findings consist of elaborate dissertations upon various isolated bits of evidence, erroneous statements of other items of evidence, exaggerated descriptions of events, contortions of various incidents, and inaccurate and misleading comparisons of the San Juan River with other

rivers; and that they fail to disclose how the court arrived at its decision. The intended purpose of the rule is to aid the appellate court in acquiring a clear understanding of the basis of the decision of the trial court. Tulsa City Lines v. Mains, 10 Cir., 107 F.2d 377; United States v. Horsfall, 10 Cir., 270 F.2d 107. We think the findings meet the requirements of the rule and therefore are not open to the criticism directed against them.

Complaint is made that the court erred in taxing costs against Utah. It is argued that being a sovereign state, Utah was immunized from liability for costs. It is the general rule that in the absence of an authorizing constitutional or statutory provision, a state court may not tax costs against the State. But this case was not in a state court. It was in the United States Court for Utah. Utah was a party litigant as a defendant and as a cross-complainant. The court had jurisdiction of the cause and of the parties. The incidents of the hearing in the exercise of the jurisdiction of the court included power to tax costs. And in such circumstances, the attributes of sovereignty did not immunize the State against the taxing of costs against it. Fairmont Creamery Co. v. Minnesota, 275 U.S. 70, 48 S.Ct. 97, 72 L.Ed. 168. And it is further argued that the other defendants were not necessary parties to the litigation and therefore costs should not have been taxed against them. These parties asserted mineral interests in the lands in the river bed, and they sought judgment quieting their title to such interests. Except as otherwise provided by statute, the taxing of costs rests in the sound judicial discretion of the trial court, and the exercise of such discretion will not be disturbed on appeal except in case of abuse. Crutcher v. Joyce, 10 Cir., 146 F.2d 518; T. & M. Transportation Co. v. S. W. Shattuck Chemical Co., 10 Cir., 158 F.2d 909; Euler v. Waller, 10 Cir., 295 F.2d 765. There was no abuse of discretion in this instance.

The judgment is affirmed.