UNITED STATES of America ex rel.
John GRIFFIN, Petitioner,

v.

Daniel McMANN, Warden, Auburn State
Prison, Auburn, New York,
Respondent.

No. 68-C-1275.

United States District Court,
E. D. New York.

Jan. 21, 1970.

Edward R. Neaher, U. S. Atty., Brooklyn, N. Y., for petitioner United States; Cyril Hyman, Asst. U. S. Atty., of counsel.

Jerald Rosenthal, New York City, for petitioner Griffin.

Louis J. Lefkowitz, Atty. Gen. of State of New York, New York City, for respondent; Arlene Silverman, Deputy Asst. Atty. Gen., of counsel.

MEMORANDUM AND ORDER

WEINSTEIN, District Judge.

In this postscript to a completed habeas corpus proceeding we are asked to assess costs of transporting the petitioner to and from Auburn State Prison to make him available for a hearing in this Court. 28 U.S.C. § 2243; United States ex rel. Griffin v. McMann, 413 F.2d 301 (2d Cir. 1969). In transporting the prisoner, the Marshal incurred expenses of $193.85; this sum included mileage, the fee charged for executing the writ, guard hire, tolls, per diem expenses, and lodging for the prisoner. The Marshal submitted his bill to petitioner. It is clear that the successful indigent petitioner should not pay. And, while a portion of the charges might be taxed against the State of New York, it seems best to leave them where they lie, with the United States.

I. EXPENSES OF ADMINISTRATION

■ Only specifically enumerated charges of Marshals may be taxed as costs. 28 U.S.C. § 1921. The sums expended for transportation of the petitioner, including guard hire, tolls, per diem expenses, and lodging for the prisoner, amounting to $101.45, do not come within this provision.

■■ These sums should properly be regarded as expenses of the administration of justice assumed by the United States. The habeas corpus statute (28 U.S.C. § 2243) directs "[that] the person to whom the writ is directed shall be required to produce at the hearing the body of the person detained." It is the duty of the Court to order production of the petitioner (Walker v. Johnston, 312 U.S. 275, 61 S.Ct. 574, 85 L.Ed. 830 (1941)), and it is the right of the petitioner to be present at his hearing where there are questions of fact to be litigated. Albert ex rel. Buice v. Patterson, 155 F.2d 429 (1st Cir. 1946), cert. denied, 329 U.S. 739, 67 S.Ct. 83, 91 L. Ed. 638 (1947).

While the duty to produce the prisoner lies upon the Warden and the State of New York, the writ served upon the Warden merely directed that the petitioner be delivered into the custody of the United States Marshal for the Eastern District of New York. No specification of the means by which, or the place at which, such a delivery was to take place was made. The Warden fully complied with the directions of this Court when he transferred custody of petitioner at Auburn State Prison. At that point, custody rested in the United States Marshal, to whom the writ was equally directed. It became his duty to produce the petitioner before the Court at the times required.

■ The Marshal could have required the State to undertake the transportation of the prisoner to New York City since the ultimate burden for production of the prisoner rests on the State. The State has taken the position that it is willing to transport incarcerated petitioners for habeas corpus hearings, using its own personnel and facilities. No reason is apparent why the United States Marshals need fetch petitioners from all corners of the State if the State is willing to do so. Just as there now are discussions under way involving federal and state judges and the New York Judicial Conference respecting a combined state-federal record of post-conviction remedies, there seems to be no reason why further state-federal cooperation should not result in a system permitting service upon a designated local representative of the State Attorney General who could arrange for the State to produce and maintain the prisoner when his presence in this district is required. The United States Attorney has suggested such an arrangement; it would be consistent with the responsibility of the State for the safekeeping of its own prisoners.

■ By accepting custody, without more, the Marshal in the instant case assumed the responsibility of transporting and lodging the prisoner. The expense

of transportation of prisoners in federal custody is governed by 28 U.S.C. § 567(2) which contemplates that the Marshal be reimbursed for his expenses from general funds of the United States. Neither the State nor the petitioner should be required to pay for the expenses of such transportation. Instead, it is a cost of the administration of justice in the courts of the United States to be borne by the United States. *Cf.* Gleckman v. United States, 80 F.2d 394 (8th Cir. 1935).

## II. TAXABLE COSTS

█ This Court has power to tax proper costs against the State. Fairmont Creamery Co. v. Minnesota, 275 U.S. 70, 48 S.Ct. 97, 72 L.Ed. 168 (1926); Utah v. United States, 304 F.2d 23 (10th Cir. 1962); United States v. Crawford 36 F.R.D. 174 (W.D.La.1964). While the nominal respondent in this case is the Warden in whose custody petitioner was held, the actual party in interest is New York State. The Warden, unlike the voting registrars in United States v. Crawford, *supra*, has not acted in a blatantly lawless manner, and it appears that the State does not contend that costs should be assessed against the Warden.

It seems hard to conclude, as the State asserts, that by amending 28 U.S.C. § 1825 to provide for initial payment by the United States of witness fees in forma pauperis habeas corpus cases, Congress indicated an intent that the United States be assessed all costs of such habeas corpus litigation. Section 1915(e) of Title 28 still provides that costs may be imposed as in other actions; it cannot be ignored in reading the 1965 amendments to 28 U.S.C. § 1825. There is nothing in § 1825 or its legislative history to indicate a change in the rules regarding costs where the petitioner is successful. The Report of the Senate Judiciary Committee on H.R. 1763, which amended 28 U.S.C. § 1825, expressly approves the procedure outlined in United States ex rel. Helwig v. Cavell, 171 F.Supp. 417 (E.D.Pa.), *aff'd sub nom.* United States ex rel. Helwig v. Maroney, 271 F.2d 329 (3d Cir. 1959), *cert. denied,* 362 U.S. 954, 80 S.Ct. 870, 4 L. Ed.2d 872 (1960), providing for an advance by the United States of witness fees. S.Rep. No. 615, 89th Cong., 1st Sess. (1965); 2 U.S.Code Cong. & Adm. News 2901, 2903 (1965). *See also* 39 Op.Comp.Gen. 133 (1959). The legislative history is neutral, however, on the question before us of how this Court's discretion to assess costs should be exercised. All that Congress apparently intended was to authorize the advance of necessary witness fees so that indigent petitioners could effectively prosecute their claims. While the court in the *Cavell* case did suggest that costs "should be ultimately imposed upon the state" (*id.,* at 424) if the petitioner were successful, this statement was not relevant to the specific issue before it— whether the United States Marshal had authority to expend his funds for witness fees—and Congress did not quote or approve it. 2 U.S.Code Cong. & Adm.News 2901–2904 (1965).

The expenses incurred by the United States Marshal in serving the writ of habeas corpus on the Respondent Warden may properly be taxed as costs. 28 U.S.C. § 1921. These costs include the mileage fees incurred by the Marshal, in the sum of $89.40, and the fee for service of the writ, in the amount of $3.00. Whether they should be so taxed is a different matter.

## III. DISCRETION NOT TO TAX COSTS

█ Although 28 U.S.C. § 1920 provides that the district courts may tax Marshal's fees as costs, in the exercise of its sound discretion a court may decline to do so. United States v. Erie R. R. Co., 200 F.2d 411 (6th Cir. 1952); United States v. Bowden, 182 F.2d 251 (10th Cir. 1950); Fed.R.Civ.P. 54(d); 6 Moore, Federal Practice ¶ 54.70[5]. It appears equitable that the fees for mileage and service of the writ of habeas corpus should not be taxed as costs against the state. Before 1867, the writ

of habeas corpus was not available to state prisoners except in very limited circumstances. *See* 1 Stat. 73, 81–82 (1789); 2 Stat. 89, 98 (1801); 4 Stat. 634–35 (1833) (extending the writ to those confined for acts done in pursuance of the laws of the United States); 5 Stat. 539 (1842) (extending the writ to aliens committed for acts under the authority of foreign nations). In 1867, the federal government assumed for the first time the duty of vindicating the federal constitutional rights of state prisoners by providing access to the federal courts under the writ of habeas corpus. 14 Stat. 385 (1867); H. Hart & H. Wechsler, The Federal Courts and the Federal System, 1236–37 (1953).

By providing an alternate forum for the assertion of federal constitutional claims, the federal government assumed the responsibility of seeing that its own hearings on such post-conviction claims against the states met the requirements of due process of law. *Cf.* Smith v. Bennett, 365 U.S. 708, 81 S.Ct. 895, 6 L.Ed.2d 39 (1961). New York has met the burden in its own courts by underwriting the necessary costs of indigent prisoners proceeding in state forums under the writ of habeas corpus. N.Y.C.P.L.R. 8501(a), 7009; People v. Hughes, 15 N.Y.2d 172, 173, 256 N.Y.S.2d 803, 804, 204 N.E.2d 849 (1965); People ex rel. James v. Society for the Prevention of Cruelty to Children, 19 Misc. 677, 678, 44 N.Y.Supp. 1100, 1101 (Sup.Ct.1897); 3 N.Y.Adv.Comm. on Practice and Procedure, Report 445 (1959). The federal government should meet the same burden. It is not a disinterested party; it should provide the same type of unfettered and equal access to its courts that the states have provided to their courts. To charge the states for actions brought in the federal courts, as well as for actions brought in the state courts, would be inequitable. Each sovereign should assume responsibility for the conduct of in forma pauperis litigation within its own court system.

Additionally, by extending the federal remedy, the federal government has made the expense of prosecution of these claims greater. Within a state, the court system is close to all. Federal courts, however, are few in number and frequently distant from the place of incarceration of state prisoners. This difficulty is made even greater in those states with more than one federal judicial district, because venue for the writ lies in both the district of imprisonment and the district in which the prisoner was sentenced. 28 U.S.C. § 2241. As is the case here, this can result in the necessity, under 28 U.S.C. § 2243, of transporting prisoners several hundred miles for hearings. A provision intended for the convenience of the federal court and petitioner should not be used to increase expenses of the State.

Finally, the imposition of these costs, so often *de minimis*, would be an exercise in futility. When a state and the federal government are involved, it is ultimately the taxpayer of both who bears the final costs imposed. Since the interest of the people lies in the enforcement of constitutional rights, the sovereignty which bears the burden of costs is of little import. The paperwork involved in court, Marshals' and administrators' time in shifting costs from the federal to state governments will often outweigh the actual sums involved.

For all these reasons, in the exercise of its discretion, this Court will not tax the costs for Marshal's fees against the State of New York.

Costs requested by the United States Marshal for transporting the petitioner are to be borne by the United States. They will be assessed against neither the Petitioner nor Respondent.

So ordered.