**J. B. TAYLOR et al., Plaintiffs-Appellees,**

v.

**E. P. PERINI, Superintendent, Defendant-Appellant.**

**No. 73-2071.**

United States Court of Appeals,
Sixth Circuit.

Argued April 15, 1974.

Decided Oct. 3, 1974.

Weick, Circuit Judge, filed separate concurring opinion; Edwards, Circuit Judge, dissented and filed opinion.

James A. Laurenson, Chief Counsel, Columbus, Ohio, for appellant; William J. Brown, Atty. Gen., Richard B. Igo, Asst. Atty. Gen., Columbus, Ohio, on brief.

Niki Z. Schwartz, Gold, Rotatori, Messerman & Hanna, Cleveland, Ohio, for appellee.

Thomas W. Gray, Gerald M. Jackson, Avery S. Friedman, Cleveland, Ohio, on brief for amicus curiae Bar Assn. of Greater Cleveland.

Armand Derfner, Washington, D. C., for amicus curiae Lawyers' Committee for Civil Rights Under Law; Wilmer, Cutler & Pickering, Washington, D. C., of counsel.

CELEBREZZE, Circuit Judge.

This is an appeal by the Superintendent of the Marion Correctional Institution at Marion, Ohio and by the State of Ohio from an Order of the District Court denying Appellant's motion to vacate a portion of a Journal Entry and Order entered on September 12, 1972 providing for the payment of attorneys' fees. The award was part of the resolution of a class action by the Institution's inmates for injunctive relief from conditions and practices violative of rights secured to them by the Constitution and 42 U.S.C. § 1983.

The action was commenced on September 17, 1969, by J. B. Taylor, an inmate of the Marion Correctional Institution on behalf of himself and his fellow inmates against E. P. Perini, Superintendent of the Institution. Counsel was appointed by the court to represent Appellees. Appellant Perini was represented by the Ohio Attorney General. Appellees' counsel filed a First Amended Complaint seeking only injunctive relief from allegedly unconstitutional conduct and conditions, including obstruction of access to courts and lawyers, racial discrimination in job assignments and racial segregation of living quarters, and deprivations of substantive and procedural due process in the administration of discipline, including the infliction of cruel and unusual punishment.

On January 7, 1971, Appellee Taylor filed a Supplemental Complaint seeking compensatory and punitive damages, alleging that Perini had personally subjected him to deprivations of civil rights in retribution for filing the lawsuit.

On September 12, 1972, the District Court entered a Journal Entry and Order which had been negotiated and agreed to by counsel. That order granted nearly all the relief requested in the First Amended Complaint, including attorneys' fees and expenses, and provided that the Court would retain continuing jurisdiction to oversee the implementation of its order.

Subsequently, following a trial, the District Court entered Findings of Fact and Conclusions of Law on the issues raised in Appellee Taylor's Supplemental Complaint. The Court held that Appellant Perini was not liable to Appellee because "the defendant was, at all times, acting in good faith to carry out his duties as he understood them."

Subsequent negotiations resulted in an agreement in December 1972 between Appellees' counsel and the Attorney General's office as to the amount to be paid pursuant to the provision for attorneys' fees. However, on February 26, 1973 the Attorney General's office advised Appellees' counsel that no attorneys' fees would willingly be paid in compliance with the order of September 12, 1972. Appellees' counsel then filed a motion for determination of attorneys' fees and expenses pursuant to the order of September 12, 1972, and Appellants moved to vacate that portion of the order providing for attorneys' fees pursuant to Rule 60(b) of the Federal Rules of Civil Procedure [1] on the ground that the Eleventh Amendment prohibited the award. On May 23, 1973, the District Court denied the motion to vacate, set the amount of the award at $21,055.07,[2] and ordered it paid.

Subsequently the Attorney General filed a motion seeking:

An order of Clarification, specifying that the award of attorneys fees in this matter was a judgment to be satisfied from revenues of the State of Ohio, and not a judgment to be exacted from the personal earnings, savings, or other assets of E. P. Perini.

On July 25, 1973 the District Court clarified its previous order by specifically providing:

" . . . the award of attorney fees in this action runs against both the defendant Perini and the State of Ohio and can be collected from either at plaintiffs' option."

The District Court also granted Appellants' motion for a stay of execution pending appeal to this Court.

■  The questions presented to us are whether a United States District Court may hold either a prison warden, in his personal capacity, or the State of Ohio, or both, liable for attorneys' fees to an attorney whom the Court appointed to represent a prisoner in a 42 U.S.C. § 1983 lawsuit against the warden. The propriety of an award of attorneys' fees by a federal court against a state or its officials acting in their official capacity has been settled in this Circuit by our recent holding in Jordon v. Gilligan, 500 F.2d 701 (6th Cir. 1974), that such an award is barred by the Eleventh Amendment.

■  Appellee contends, however, that the state waived its immunity under that amendment when the Attorney General consented to the original court order awarding attorneys' fees. We do not agree. In Ford Motor Co. v. Department of Treasury, 323 U.S. 459, 65

---

1. The pertinent provisions of Rule 60(b) provide:
    On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:
        *       *       *       *       *

(4) the judgment is void;
        *       *       *       *       *
or (6) any other reason justifying relief from the operation of the judgment.

2. This figure was reached by agreement of the parties.

S.Ct. 347, 89 L.Ed. 389 (1945), the Supreme Court, in interpreting a provision of the Indiana Constitution, stated:

We interpret this provision as indicating a policy prohibiting state consent to suit in one particular case in the absence of a general consent to suit in all similar causes of action. Since the state legislature may waive state immunity only by general law, it is not to be presumed in the absence of clear language to the contrary, that they conferred on administrative or executive officers discretionary power to grant or withhold consent in individual cases. Nor do we think that any of the general or special powers conferred by statute on the Indiana attorney general to appear and defend actions brought against the state or its officials can be deemed to confer on that officer power to consent to suit against the state in courts when the state has not consented to be sued. 323 U.S. at 468, 65 S.Ct. at 352.

And in Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), which followed the holding in *Ford Motor*, the Supreme Court said:

In deciding whether a State has waived its constitutional protection under the Eleventh Amendment, we will find waiver only where stated "by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction." Murray v. Wilson Distilling Co., 213 U.S. 151, 171, 29 S.Ct. 458, 53 L.Ed. 742 (1909). 415 U.S. at 673, 94 S.Ct. at 1361

We are unable to conclude that the State of Ohio has, through its Attorney General, waived its constitutional immunity by consenting to the award of attorneys' fees in this case. The Ohio Supreme Court has held that an award of attorneys' fees to be paid out of the state treasury must be authorized by a two-thirds vote of the General Assembly. Grandle v. Rhodes, 169 Ohio St. 77, 157 N.E.2d 336 (1959). Thus, we find that the state has not conferred on its Attorney General the authority to consent in individual cases to a payment of attorneys' fees out of the state treasury. In view of this determination, the award of fees against the State of Ohio cannot stand.

On a different footing is the award of attorneys' fees against Appellant Perini in his individual capacity. An award of attorneys' fees individually against Perini is not, of course, barred by the Eleventh Amendment. Even an award of damages is not so barred. As the Supreme Court recently reiterated, "damages against individual defendants are a permissible remedy in some circumstances notwithstanding the fact that they hold public office." Scheuer v. Rhodes, 416 U.S. 232, 238, 94 S.Ct. 1683, 1687, 40 L.Ed.2d 90 (April 17, 1974). Two considerations are necessary, however, to determine whether the award made in this case can stand. First, it is contended that Perini is immune from liability under a theory of common law executive immunity. The Supreme Court, in Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683 (1974), discussed the nature of this immunity in the context of a suit filed under 42 U.S.C. § 1983:

These considerations suggest that, in varying scope, a qualified immunity is available to officers of the executive branch of Government, the variation dependent upon the scope of discretion and responsibilities of the office and all the circumstances as they reasonably appeared at the time of the action on which liability is sought to be based. It is the existence of reasonable grounds for the belief formed at the time and in light of all the circumstances, coupled with good faith belief, that affords basis for qualified immunity of executive officers for acts performed in the course of official conduct. 416 U.S. at 247, 94 S.Ct. at 1692

Thus, in order to determine whether a defendant is entitled to official immunity from liability for damages, there must be some finding as to the scope of his discretion, the existence of reasonable

grounds for the propriety of the official's actions, and the exercise of good faith in the performance of his duties. As we have indicated previously, repeated acts of negligence may form the basis of liability for a prison warden under § 1983. Pucket v. Cox, 456 F.2d 233 (6th Cir. 1972).

However, the order in the District Court was entered

> "without admission of any violation of the Constitutional rights, privileges or without a finding by the Court of whether the defendant has deprived any of the members of plaintiffs' class of any such rights, privileges or immunities of any of the members of the plaintiff class by defendant, and munities."

Thus, the purpose of the action was to remedy conditions existing in the Marion Correctional Institution, not to impose a liability against Perini individually for past deprivations of constitutional rights. The original complaint, in fact, sought only injunctive relief from unconstitutional conditions. Such actions are, of course, cognizable under § 1983. Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347 (1974); Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). The question becomes, then, not one of immunity but whether an award of attorneys' fees is, under the circumstances of this case, equitable. See Hoitt v. Vitek, 497 F.2d 598 (1st Cir. 1974); Jordan v. Fusari, 496 F.2d 646 (2d Cir. 1974); Brandenburger v. Thompson, 494 F.2d 885 (9th Cir. 1974); cf. Skehan v. Board of Trustees, 501 F.2d 31 (3rd Cir. 1974).

We are, at this point, presented with the question of whether Appellant Perini consented to the award of attorneys' fees. The District Court's order provided:

> [That] defendant shall pay to plaintiffs' counsel reimbursement for out-of-pocket expenses and reasonable attorney's fees based upon services rendered in the handling of this action. In the event the parties are unable to agree upon the amount of payment under this paragraph, such issue shall be submitted to the Court for hearing and decision.

■ We have no hesitation in finding that a consent to an award would be binding on Perini.[3] Our question is whether we are presented with such a consent. While the District Court's order clearly expresses an agreement to pay attorneys' fees, it is not clear who agreed to pay them. The language used by the District Court in granting Appellant's motion for clarification leads to an ambiguity in determining the meaning of the Court's original order. The District Court stated, in part:

> On September 12, 1972, a consent order was entered in this matter, part of which provided for payment of plaintiffs' attorney fees. Subsequently, defendant moved to vacate that portion of the consent order. On May 23, 1973, this Court denied the motion to vacate and awarded attorney fees as part of its equitable powers. Sims v. Amos, 340 F.Supp. 691 (M.D.Ala.) (Three-judge court) aff'd 409 U.S. 942, 93 S.Ct. 290, 34 L.Ed.2d 215 (1972). See also Hall v. Cole, 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973).

Because of the way this issue was presented, some question has arisen as to whether the defendant Perini or the State of Ohio was to satisfy the award. There can be no doubt that the Court has the power to assess costs against the named defendant. Sims v. Amos, *supra*. This was done, and consequently, the defendant Perini is liable for the award. In addition, however, it is apparent that the State of Ohio was and is a real party in interest to this action. Although the State of Ohio could not have been named as a defendant, it seems clear

---

3. While Appellant Perini has not raised as an issue his lack of consent to the award of attorneys' fees, we mention the point because we are not clear as to the reasoning on which the award was based.

that an assessment of costs can be made against the state in this situation. *See discussion* United States ex rel. Griffin v. McMann, 310 F.Supp. 72, 74 (E.D.N.Y.1970). Thus, the award of attorney fees in this action runs against both the defendant Perini and the State of Ohio and can be collected from either at plaintiffs' option.

Thus, it is unclear whether the court assessed attorneys' fees against Perini because he had consented to pay them or because the Court simply felt an award of attorneys' fees against Perini was equitable. For this reason, we must remand to the District Court for a finding on this question.[4] It is necessary that a Court state its reasons for granting or denying attorneys' fees, in order that the Court's action can be properly reviewed on appeal. *See* Milburn v. Huecker, 500 F.2d 1279 (6th Cir. 1974). If it is determined that Appellant consented to the award of attorneys' fees, then they would stand on that basis. If it is found that there was no consent, then the award must rest on equitable considerations.

■■■■ While the traditional American rule has not permitted recovery of attorneys' fees unless statutorily or contractually authorized, federal courts may, when the interests of justice require, exercise their equitable power to award attorneys' fees in the absence of such authorization. Hall v. Cole, 412 U.S. 1, 5, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973). Thus, in an appropriate case, attorneys' fees may be awarded in a § 1983 case, even though that statute does not expressly authorize such an award. Brandenburger v. Thompson, 494 F.2d 885 (9th Cir. 1974); Sims v. Amos, 340 F.Supp. 691 (M.D.Ala.) aff'd 409 U.S. 942, 93 S.Ct. 290, 34 L.Ed.2d 215

(1972). The inquiry, then, is whether the present action is an appropriate case. *See* Milburn v. Huecker, 500 F.2d 1279 (6th Cir. 1974).

It is established that an award of attorneys' fees is appropriate when the unsuccessful party has acted in bad faith or when the litigation has conferred a substantial benefit on the members of an ascertainable class and the award serves to spread the cost of litigation among them. Hall v. Cole, 412 U.S. 1, 5, 93 S.Ct. 1943 (1973). This latter exception is generally referred to as the "common fund" or "common benefit" exception. As an award against Appellant individually would not serve to spread the cost of litigation, it appears that the "common benefit" exception is not applicable here.

It is unclear from the order of the District Court whether the award was based on the bad faith of Appellant and was thus awarded to punish his obdurate behavior. Appellant contends that the District Court specifically found that he was at all times acting in good faith. If so, this would preclude an award of attorneys' fees under the bad faith rationale. See Capers v. Cuyahoga County Board of Elections, 472 F.2d 1225 (6th Cir. 1973). It is true that the Court, in its order of October 10, 1972, made such a finding with regard to allegations made in the Supplemental Complaint involving Appellee's transfer from the Marion Correctional Institution to the Ohio Penitentiary. That finding did not refer, however, to the allegations made in the First Amended Complaint which were resolved by the order of September 12, 1972. There had not been then, any finding with regard to Perini's good faith as to Appellees' main contentions.

4. We have previously discussed the strong policy favoring enforcement of settlement agreements. Kukla v. National Distillers, 483 F.2d 619 (6th Cir. 1973). It has been held that a judgment entered by agreement of the attorney of record will be set aside only upon affirmative proof by the party seeking to vacate it that the attorney had no right to consent to its entry. Thomas v. Colorado Trust Deed Funds, Inc., 366 F.2d 136 (10th Cir. 1966). Our difficulty arises, however, from an inability to determine whether there has in fact been a consent by the attorney.

A third exception to the general rule has been recognized in cases where the plaintiff has acted as a " 'private attorney general,' vindicating a policy that Congress considered of the highest priority." Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968); Hoitt v. Vitek, 497 F.2d 598 (1st Cir. 1974); Wilderness Society v. Morton, 495 F.2d 1026 (D.C.Cir.1974) (en banc); Brandenburger v. Thompson, 494 F.2d 885 (9th Cir. 1974); Knight v. Auciello, 453 F.2d 852 (1st Cir. 1972). While we have not previously considered directly the "private attorney general" exception, we find ourselves in agreement with the reasoning which underlies these decisions. Awarding attorneys' fees in cases where there is no potential substantial award of damages and where the cost of supporting a case for injunctive relief is high serves to prevent the unjust discouragement of parties in bringing suits to vindicate important rights. Wilderness Society v. Morton, 495 F.2d 1026 (D.C.Cir. 1974) (en banc).

■ In turning to the facts of this case, we find that Appellees, in bringing this action, vindicated constitutional rights strongly favored by congressional policy. Sims v. Amos, 340 F.Supp. 691 (M.D.Ala.), aff'd 409 U.S. 942 (1972); Brandenburger v. Thompson, 494 F.2d 885 (9th Cir. 1974). They could not have maintained the action if they had been required to support the extensive discovery necessary for a suit of this nature. Thus, in this type of lawsuit, "[t]o secure counsel willing to undertake the job of trial, [including the substantial duty of representing an entire class] . . . necessarily means that someone—plaintiff or lawyer—must make a great sacrifice unless equity intervenes." Bradley v. Richmond School Board, 416 U.S. 696, n. 25, 94 S.Ct. 2006, 2019, 40 L.Ed.2d 476 (May 15, 1974).

The judgment of the District Court is reversed with regard to the assessment of attorneys' fees against the State of Ohio. This finding is based on our holding that the award is barred by the Eleventh Amendment. However, the District Court on remand may wish to consider whether H.B. 800, effective January 1, 1975, which waives the immunity of the State of Ohio, is effective in this case.[5]

The case is remanded for findings with regard to Appellant's consent to the award against him. If the District Court finds that Appellant did not consent to the award, but that an award of attorneys' fees is appropriate, it must state its reasons for making the award, in order that the award can be properly reviewed.

WEICK, Circuit Judge (concurring).

I concur in the reversal of the judgments against the State of Ohio and E. P. Perini, as Superintendent. The District Court never acquired jurisdiction over the State of Ohio because it was not made a party defendant in this case. Had it been made a party defendant, the State (as well as the Superintendent) would have had a complete defense of sovereign immunity under the Eleventh Amendment to the Constitution. Krause v. Ohio, 31 Ohio St.2d 132, 285 N.E.2d 736 (1972), dismissed for want of a substantial federal question 409 U.S. 1052, 93 S.Ct. 557, 34 L.Ed.2d 506 (1972), rehearing denied, 410 U.S. 918, 93 S.Ct. 959, 35 L.Ed.2d 280 (1973); Jordon v. Gilligan, 500 F.2d 701 (6th Cir. 1974); State ex rel. Williams v. Glander, 148 Ohio St. 188, 74 N.E.2d 82 (1947).

The Attorney General of Ohio had no power or authority to waive sovereign immunity of either the State or its officers and agent, or to consent to a judgment against either of them awarding attorneys' fees. Grandle v. Rhodes, 169

---

5. Some of the considerations would be whether the act would apply retroactively to cases pending on appeal, Bradley v. Richmond School Board, 416 U.S. 696, 94 S.Ct. 2006 (1974); whether by virtue of the waiver, a federal court can make an award of attorneys' fees against the State of Ohio; and whether the waiver as to actions in federal court would be applicable prior to the January 1, 1975 effective date of the act.

Ohio St. 77, 157 N.E.2d 336 (1959); Ford Motor Co. v. Dept. of Treasury of Indiana, 323 U.S. 459 (1945); cf. Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). The judgment entered against the State and the Superintendent is therefore void. Jordon v. Gilligan, *supra*.

This leaves only the issue whether Mr. Perini may be held personally liable for fees to the attorney for the plaintiff.

I concur in the remand to the District Court to determine that issue and to adopt findings of fact and conclusions of law relative thereto.

It should be noted that under Ohio law the Attorney General is counsel for the State and for its various departments and agencies. The statute forbids any head of a State department or agency to hire private counsel. Ohio Rev. Code § 109.02.

Because of this statute, in my opinion, the Attorney General ought not to consent to a judgment against Mr. Perini individually unless he had either express or implied authority from Perini to do so. The District Court should take evidence on this issue and adopt findings of fact and conclusions of law.

In the absence of consent, in my opinion Mr. Perini individually had qualified executive privilege or immunity under the principles enunciated by the Supreme Court in Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683 (1974).

In my opinion, no judgment can properly be entered against Mr. Perini individually unless the court finds from all of the evidence that he acted in bad faith. The District Court made a specific finding of good faith on the issues involving the Supplemental Complaint for damages. The factual findings on that issue involved careful consideration of a number of matters. It made no findings, however, on the issue of good faith in connection with the Amended Complaint. It may do so now.

EDWARDS, Circuit Judge (dissenting).

In this case this court is faced for the first time with the following question:

After a federal district judge has heard a lawful suit against a state official (here the Superintendent of a state correctional institution) and entered an appropriate order (here by consent decree) which was clearly within his jurisdiction restraining him (the Superintendent) from continuing practices found (and here conceded) to have been in violation of the federal constitution, does an 11th Amendment defense prohibit that judge from ordering payment of an attorney fee (here conceded to be equitably appropriate and reasonable) to the counsel the District Judge had appointed to represent the indigent plaintiffs where the state through its Attorney General has represented the state official in his official capacity throughout the litigation, and the state would have to pay the fee awarded?

Phrased in more general terms the question may likewise be stated:

Does an 11th Amendment defense prohibit an otherwise equitable and appropriate award of attorneys' fees to the prevailing party in a suit to restrain a state official from violating the U.S. Constitution while acting in his official capacity?

I would answer the questions "No" because:

1) The 11th Amendment contains no prohibition against costs or attorneys' fees awarded in a successful suit filed against state officials as opposed to the state itself.

2) The Supreme Court of the United States has squarely decided this identical issue in a recent case which is binding upon this court. Sims v. Amos, 336 F.Supp. 724, 340 F.Supp. 691 (M.D.Ala.), aff'd, 409 U.S. 942, 93 S.Ct. 290, 34 L.Ed.2d 215 (1972).

3) There is no precedent which either directly or by implication supports such a prohibition and there is much historic

precedent from the Supreme Court and other Courts of Appeals (and statutory interpretation by the U.S. Congress) which argues strongly to the contrary.

4) This court as a whole has never passed upon the merits of this issue, although two different panels have by inadvertence recently reached opposite conclusions thereon. See Jordan v. Gilligan, 500 F.2d 701 (6th Cir. 1974) and Milburn v. Huecker, 500 F.2d 1279 (6th Cir. 1974).

## THE 11th AMENDMENT

The 11th Amendment to the Constitution provides:

> "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

It should be noted that the Constitutional language does not in its terms bar suits by citizens of a state against *that state*. Such a prohibition has, however, been implied by settled Supreme Court precedent. Hans v. Louisiana, 134 U.S. 1, 10–11, 10 S.Ct. 504, 33 L.Ed. 842 (1890). Nonetheless neither the specific language of the 11th Amendment nor any Supreme Court interpretation of it purports to bar suits against state officials to restrain them from violating the Constitution of the United States. (Indeed the cases where the federal courts have exercised such jurisdiction are legion.) And there is likewise neither 11th Amendment language nor Supreme Court precedent which holds that attorneys' fees if otherwise legally justified are prohibited in an otherwise lawful, appropriate and successful suit against a state official acting in his official capacity.

## THE CONTROLLING CASE

The identical issue which divides us in this case has recently been decided by the United States Supreme Court. In Sims v. Amos, 336 F.Supp. 924, 340 F. Supp. 691 (M.D.Ala.) aff'd 409 U.S. 942, 93 S.Ct. 290 (1972) a three-judge court, after entering an order for reapportionment, awarded to the Plaintiffs attorneys' fees and expenses against the Governor, the state legislators, the Attorney General and the Secretary of State. On direct appeal to the United States Supreme Court these defendants represented to that court that the award of attorneys' fees and expenses against the named state officials sued in their official capacities "was tantamount to the award of a money judgment against the State of Alabama."

The Supreme Court of the United States affirmed the judgments of the three-judge District Court summarily and unanimously. In Jordan v. Gilligan, 500 F.2d 701 (6th Cir. 1974) on rehearing after the applicability of this affirmance to the attorneys' fees question became certain, the opinion of the court (upon which the majority in this case relies without discussion) held that because the Supreme Court affirmance of Sims v. Amos, *supra*, was summary in character and rendered without opinion, it was not precedent which was binding upon this court.

Respectfully I disagree. The fact that some justices of the Supreme Court may feel that a summary affirmance carries less weight *with them* than an argued case decided by full opinion and hence is easier *for them* to overrule, gives this court no right or power to overrule or disregard any decision of the United States Supreme Court. The Supreme Court (while paying respect to the doctrine of stare decisis) still has (and exercises) the absolute power to overrule any of its prior decisions whether decided by summary order or full opinion. This court has no power to overrule any Supreme Court decision. On the contrary, even if the great majority of our court feels that a decision of the Supreme Court is wrong in law and equity (See Milliken v. Bradley, 418 U.S. 717, 94 S.Ct. 3112, 41 L.Ed.2d 1069 (1974) (majority opinion) and *cf.* Bradley v. Milliken, 484 F.2d 215 (6th Cir. 1973) (majority opinion)), we are bound to

follow and give effect to that decision. Indeed in the majority opinion in Milliken v. Bradley the Chief Justice relied upon a Supreme Court summary affirmance of a three-judge court decision in arguing by analogy that our court had erred. 418 U.S. 717, 741, 94 S.Ct. 3112 (1974) citing Spencer v. Kugler, 326 F. Supp. 1235 (D.N.J.), aff'd 404 U.S. 1027, 92 S.Ct. 707, 30 L.Ed.2d 723 (1972).

The Second Circuit has recently had occasion to review the question as to whether a summary order of the Supreme Court is controlling precedent. It held:

"Plaintiffs argue that the way is now open for the district court to consider their constitutional claim because of the following language in Mr. Justice Rehnquist's majority opinion in Edelman v. Jordan, supra:

'[T]hese three summary affirmances obviously are of precedential value in support of the contention that the Eleventh Amendment does not bar the relief awarded by the District Court in this case. Equally obviously they are not of the same precedential value as would be an opinion of this Court treating the question on the merits.'

"415 U.S. at 671, 94 S.Ct. at 1359 (emphasis added). According to plaintiffs, the Supreme Court has thus made clear that the lower federal courts are free to disregard as binding precedent a summary affirmance by the Court like Romero.

"We do not agree with this argument. The language quoted above does not say that the circuit courts can disregard summary affirmances by the Supreme Court. At most, it seems to suggest that the Court itself would feel less bound by principles of stare decisis in dealing with issues already decided by a summary affirmance. But we continue to believe that the privilege of disregarding even summary Supreme Court holdings rests with the court alone. As we said in our prior opinion, 478 F.2d at 540:

[G]iven Romero, the slate is not clean; plaintiffs must obtain any further writings on it in this case from the Supreme Court."

Doe v. Hodgson, 500 F.2d 1206 at 1207–1208 (2d Cir. 1974).

I agree. I feel that the Supreme Court order of affirmance in Sims v. Amos is absolutely binding upon us. It should be noted that Sims v. Amos is directly in point as to the facts of our instant case and requires our affirmance of the District Judge's award of attorneys' fees in this case.

## OTHER PRECEDENT

Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347 (1974), shows that the Supreme Court is unanimously committed to suits against state officers for prospective restraint of violations of the Federal Constitution—even where the judgment results in a financial burden being placed on the state and there has been an 11th Amendment defense.

In *Edelman* the Supreme Court majority opinion said:

"The injunction issued in Ex parte Young [209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)] was not totally without effect on the State's revenues, since the state law which the Attorney General was enjoined from enforcing provided substantial monetary penalties against railroads which did not conform to its provisions. Later cases from this Court have authorized equitable relief which has probably had greater impact on state treasuries than did that awarded in Ex parte Young. In Graham v. Richardson, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed. 2d 534 (1971), Arizona and Pennsylvania welfare officials were prohibited from denying welfare benefits to otherwise qualified recipients who were aliens. In Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), New York City welfare officials were enjoined from following

New York State procedures which authorized the termination of benefits paid to welfare recipients without prior hearing. But the fiscal consequences to state treasuries in these cases were the necessary result of compliance with decrees which by · their terms were prospective in nature. State officials, in order to shape their official conduct to the mandate of the Court's decrees, would more likely have to spend money from the state treasury than if they had been left free to pursue their previous course of conduct. Such an ancillary effect on the state treasury is a permissible and often an inevitable consequence of the principle announced in Ex parte Young, supra." Edelman v. Jordan, *supra*, 415 U.S. at 667, 94 S. Ct. at 1357 (Footnote omitted).

This language clearly means that the 11th Amendment does not bar injunctive relief against unconstitutional acts of state officers, even though such relief will have an impact on the state treasury.

The Supreme Court commitment to vindicating federal constitutional rights through suits against state officers is further exemplified by the very recent decision of a unanimous Court in allowing suits for damages against state officers, in one of the Kent State cases, Scheuer v. Rhodes, 416 U.S. 232, 94 S. Ct. 1683 (1974).

Neither *Edelman* nor *Scheuer* dealt directly with attorneys' fees. But if such litigation is within the jurisdiction of the federal courts, then such appurtenances of litigation as costs and attorneys' fees (where otherwise appropriate) must also be within the federal courts' jurisdiction where they are "ancillary effects" of suits to restrain state officers.

Aside from Sims v. Amos, *supra*, the controlling case in relation to our current problem is, I believe, Fairmont Creamery Co. v. Minnesota, 275 U.S. 70, 48 S.Ct. 97, 72 L.Ed. 168 (1927). The *Fairmont Creamery* case did not involve

attorneys' fees, but in it the Supreme Court awarded costs of litigation squarely against the state of Minnesota. I can perceive no distinction for purposes of the 11th Amendment between the District Court's power to award costs and its power to award attorneys' fees.

In *Fairmont Creamery*, Chief Justice Taft said:

"That the sovereign is not to be taxed with costs in either civil or criminal cases by rule of court without a statute is undoubtedly true . . . . But is the state to be regarded as a sovereign here? This court is not a court created by the State of Minnesota. The case is brought by a writ of error issued under the authority of the United States by virtue of the Constitution of the United States. It is not here by the state's consent but by virtue of a law, to which it is subject. Though a sovereign, in many respects, the state when a party to litigation in this court loses some of its character as such.

" . . . A rule of this court as to the awarding and division of costs is, of course, not a statute, but such a rule seems to us to be within the inherent authority of the court in the orderly administration of justice as between all parties litigant, properly within its jurisdiction, except the sovereign government. . . .

\*   \*   \*   \*   \*   \*

" . . . We think that the rule construed by long practice justifies us in treating the state just as any other litigant, and in imposing costs upon it as such . . . ." Fairmont Creamery Co. v. Minnesota, 275 U.S. 70, 73–75, 77, 48 S.Ct. 97 (1927).

Attorneys' fees, where otherwise appropriate are, like costs, a necessary part of an action to vindicate Constitutional rights. They are not comparable to an award of damages or of retroactive benefits.

There is also other precedent for holding that a District Judge has jurisdiction to award attorneys' fees (where such would normally be allowed) against state officers who plead an 11th Amendment defense.

The Ninth Circuit has recently decided a case holding that an award of attorneys' fees in a § 1983 suit against state officers is warranted. Brandenburger v. Thompson, 494 F.2d 885 (9th Cir. 1974). *See also* Natural Resources Defense Council, Inc. v. Environmental Protection Agency, 484 F.2d 1331 (1st Cir. 1973); Utah v. United States, 304 F.2d 23 (10th Cir.), cert. denied 371 U.S. 826, 83 S.Ct. 47, 9 L.Ed.2d 65 (1962); NAACP v. Allen, 340 F.Supp. 703 (M.D.Ala. 1972); La Raza Unida v. Volpe, 57 F.R.D. 94 (N.D.Cal.1972), aff'd, 488 F.2d 559 (9th Cir. 1974).

In another recent case Judge Tuttle, writing for the Fifth Circuit and dealing with the precise issue confronting us, said:

> "The only issue of concern in this appeal arises from the fact that the trial court fashioned its decree for attorney's fees in a manner that caused the defendants to challenge this award as being prohibited by the principle of sovereign immunity and, by analogy, to the eleventh amendment to the United States Constitution. See Hans v. State of Louisiana, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1889). This contention is a familiar one in cases in which courts have entertained actions against state officials, boards and commissions in equity. See, *e. g.,* Orleans Parish School Board v. Bush, 242 F.2d 156 (5th Cir. 1957) and the many school cases subsequently decided by this court.
>
> "In Sims v. Amos, 336 F.Supp. 924, 340 F.Supp. 691 (M.D.Ala. 1972), aff'd., 409 U.S. 942, 93 S.Ct. 290, 34 L.Ed.2d 215 (1972), the District Court for the Middle District of Alabama dealt with the award of attorney's fees and expenses incurred in a suit against the Governor, state legislators, the attorney general and the

secretary of state of Alabama. The Court expressly held against the 'Alabama State Legislators, the Governor, the Attorney General and the Secretary of State.'

> "In their jurisdictional statement to the Supreme Court, the defendants in *Sims* stated:
>
> 'the award to the plaintiffs of their attorney's fees and expenses incurred and in the taxing of these items as costs against the defendants who are elected state officials sued in their official capacity . . . was tantamount to the award of a money judgment against the State of Alabama in direct violation of the doctrine of sovereign immunity.'

The Supreme Court affirmed the judgment of the three-judge district court without opinion. In the California case of La Raza Unida v. Volpe, 57 F.R.D. 94 (N.D.Cal. 1972), the court noted:

> 'That federal courts have awarded attorney's fees to successful litigants against state officers without statutory authority cannot be denied. *See, e. g.,* Sims v. Amos, *supra,* (Governor of Alabama and Secretary of State); Wyatt v. Stickney, 344 F.Supp. 373 (M.D.Ala. decided April 13, 1972), (State regulatory agency). *See also* Cooper v. Allen, *supra* [467 F.2d 836), (5th Cir. 1972)] (Mayor of Atlanta, Georgia); Brewer v. School Board of Norwalk (sic), *supra* [456 F.2d 943 (4th Cir. 1972)] (school board); Hammond v. Housing Authority & Urban Renewal Agency of Lane County, 328 F.Supp. 586 (D.Or. 1971), (municipal housing authority). But of course, the eleventh amendment has been read not to apply to local bodies. Lincoln County v. Luning, 133 U.S. 529, 10 S.Ct. 363, 33 L.Ed. 766 (1890).
>
> 'Since we conclude as the court did in *Sims* that the state may no more immunize an individual from

costs incident to an injunction than it may insulate him from the injunction itself, we find that sovereign immunity does not bar an award of attorney's fees against Chief Engineer Legarra. . . . ' 57 F.R.D. at 101–102.

✓ "This Court has said that in such a suit as this the award of attorney's fees is not an award of damages against the State, even though funds for payment of the costs may come from the state appropriations. In Harkless v. Sweeney Independent School District, 427 F.2d 319 (5th Cir. 1970) we said:

> 'Section 1983 was designed to provide a comprehensive remedy for the deprivation of federal constitutional and statutory rights. The prayer for back pay is not a claim for damages, but is an integral part of the equitable remedy of injunctive reinstatement.' 427 F.2d at 324.

✓ "Although the trial court had the power to assess attorney's fees and expenses against the individual defendants found to have engaged in the unconstitutional conduct, we think it does not vitiate the award because the trial court prescribed that this part of the costs were to be payable 'from funds which the Mississippi Legislature, at its 1973 Session, may appropriate for the operation of the Mississippi State Penitentiary,' and were not to be 'the personal, or individual, liability of the varied defendants or any of them.' See also, the following cases which have dealt with this question: La Raza Unida v. Volpe, 57 F. R.D. 94 (N.D.Cal. 1972); Brewer v. School Board of City of Norfolk, Va., 456 F.2d 943 (4th Cir. 1972) cert. den., 406 U.S. 933, 92 S.Ct. 1778, 32 L.Ed.2d 136 (1972); Thompson v. Richland Parish Police Jury, 5 Cir., 478 F.2d 1401 [No. 72–3413, June 13, 1973]; Wyatt v. Stickney, 344 F. Supp. 387 (M.D.Ala. 1972)." Gates v. Collier, 489 F.2d 298, 302–303 (5th Cir. 1973). (Footnotes omitted.)

The issue in this case is a matter of national importance far exceeding the interests of the parties involved. In many instances Congress has developed statutes designed to implement and enforce basic constitutional rights through the use of private suits where plaintiffs act like private attorneys-general. In many areas of constitutional law such as voting rights, prisoner rights, sex and race discrimination cases, the claimants are likely to be indigent and unable to pay attorneys' fees. For us to fail to follow recent (and old) Supreme Court precedent and the decisions of other Circuits in allowing attorneys' fees in this and similar cases may seriously impede the vindication of rights guaranteed by the U. S. Constitution.

## OTHER CASES IN THIS COURT

In recent months this court has had before different panels four cases involving the identical question discussed above. Jordan v. Gilligan, 500 F.2d 701, 6th Cir.; Milburn v. Huecker, 500 F.2d 1279, 6th Cir., Taylor v. Perini, No. 73–2071; Incarcerated Men of Allen County v. Fair, No. 74–1052.

The first case to come to decision by a panel of the court was Jordan v. Gilligan, *supra*. There in a case quite different from our instant case in that equitable entitlement to any attorneys' fees from the state was highly dubious, the opinion of the court ruled out the attorneys' fees, holding them to be barred by the 11th Amendment. A motion for rehearing en banc was defeated 6 to 3 without our court as a whole ever reaching the merits of the matter. After that vote was recorded the bound volume of Supreme Court reports showing that the Supreme Court had squarely affirmed the allowance of attorneys fees in Sims v. Amos appeared.

Thereupon the panel of the court which had the *Jordan* case granted rehearing, apparently to reconsider its position on the 11th Amendment question. (The previous opinion had relied upon the fact that reported affirmance of Sims v. Amos had not applied to the

three-judge court judgment in 340 F. Supp. 691 which contained the order of attorneys' fees.) While such reconsideration was in progress another unanimous panel of the court (of which the writer was a member) decided and sent to the printer an opinion in Milburn v. Huecker, 500 F.2d 1279 (6th Cir. 1974), which remanded the attorneys' fee question in that case with the clear implication that the District Judge was free to award such if he found appropriate equitable grounds for so doing—even if the fees would actually have to be paid by the state concerned. The *Jordan* panel, however, decided to reiterate its previous holding by arguing that even if Sims v. Amos was in point and allowed attorneys' fees against an 11th Amendment defense, this court had the power to disregard the Supreme Court's affirmance of *Sims* because as noted above the affirmance was summary and not accompanied by formal opinion. Processing of the two cases in the hands of the printers gave the *Jordan* opinion an earlier date of publication than the *Milburn* opinion. Since the two opinions reach opposite results, it is this case which will determine the ultimate position of our circuit.

For the reasons spelled out above I believe the *Sims* decision by the United States Supreme Court is controlling in this case and the *Jordan* opinion upon which my colleagues rely is in error in holding that this court has the authority to disregard it.

Additionally, I see no need for remand of this case. The District Judge has made clear in his findings that Defendant Perini was acting at all times in good faith and in the course of his official duties. I do believe that (following the formula employed in Gates v. Collier, *supra*) the judgment should be amended to run only against Defendant Perini as Superintendent of the Marion Correctional Institution and should require him to pay the sum assessed as an attorney fee out of any sums appropriated for the operation of that institution.